## COOK *v.* COOK.

No. 30.   Argued November 7, 1951.—Decided December 3, 1951.

*Henry Lincoln Johnson, Jr.* argued the cause and filed a brief for petitioner.

*H. Mason Welch* argued the cause and filed a brief for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Shortly after petitioner and respondent were married on February 5, 1943, respondent discovered that petitioner was the lawful wife of one Mann.  At that time petitioner and respondent were living in Virginia and agreed that petitioner would go to Florida and obtain there a divorce from Mann, so that they could be remarried.  That course

was followed, respondent paying a part of the expenses of the trip to Florida and of the divorce action. Petitioner received a Florida decree and a few weeks later, December 18, 1943, again married respondent. Marital difficulties developed and petitioner secured in Hawaii a decree of separation and maintenance. Thereafter respondent brought the present action in the Vermont courts to have the marriages declared null and void. Petitioner was served by publication and appeared. There was a trial, after which the Windsor County Court granted a judgment of annulment. It found that under Florida law it was necessary for petitioner to have had an intention to live and remain in Florida, which she did not have; that she testified falsely in the Florida proceedings respecting her domicile in Florida; and that she secured the Florida decree by deceiving the Florida court as to her domicile. The Windsor County Court annulled the marriage of February 5, 1943, and dismissed the petition as respects the second marriage. The Supreme Court of Vermont affirmed the judgment annulling the first marriage but reversed the dismissal as to the second marriage and held it also null and void. 116 Vt. 374, 76 A. 2d 593. The case is here on certiorari. 341 U. S. 914.

On this record we do not know what happened in the Florida divorce proceedings except that the Florida court entered a divorce decree in favor of petitioner and against Mann. So far as we know, Mann was a party to the proceedings. So far as we know, the issue of domicile was contested, litigated and resolved in petitioner's favor. If the defendant spouse appeared in the Florida proceedings and contested the issue of the wife's domicile (*Sherrer* v. *Sherrer*, 334 U. S. 343) or appeared and admitted her Florida domicile (*Coe* v. *Coe*, 334 U. S. 378) or was personally served in the divorce state (*Johnson* v. *Muelberger*, 340 U. S. 581, 587), he would be barred from attacking the decree collaterally; and so would a stranger

128

to the Florida proceedings, such as respondent, unless Florida applies a less strict rule of *res judicata* to the second husband than it does to the first. See *Johnson* v. *Muelberger, supra.* On the other hand, if the defendant spouse had neither appeared nor been served in Florida, the Vermont court, under the ruling in *Williams* v. *North Carolina,* 325 U. S. 226, could reopen the issue of domicile.

But the burden of undermining the decree of a sister state "rests heavily upon the assailant." *Williams* v. *North Carolina, supra,* p. 234; *Esenwein* v. *Commonwealth,* 325 U. S. 279, 280–281. A judgment presumes jurisdiction over the subject matter and over the persons. See *Titus* v. *Wallick,* 306 U. S. 282, 287. As stated for the Court by Justice Stone in *Adam* v. *Saenger,* 303 U. S. 59, 62, "If it appears on its face to be a record of a court of general jurisdiction, such jurisdiction over the cause and the parties is to be presumed unless disproved by extrinsic evidence, or by the record itself."

The Florida decree is entitled to that presumption. That presumption may of course be overcome by showing, for example, that Mann never was served in Florida nor made an appearance in the case either generally or specially to contest the jurisdictional issues. The Vermont Supreme Court recognized that there were no findings on those issues in the present record. The Court in referring to the case of *Williams* v. *North Carolina,* 325 U. S. 226, said, "It was there held that the question of bona fide domicile was open to attack, notwithstanding the full faith and credit clause when the other spouse neither had appeared nor been served with process in the state. The findings here do not show either of these criteria." 116 Vt. 374, 378, 76 A. 2d 593, 595. Yet it is essential that the court know what transpired in Florida before this collateral attack on the Florida decree can be resolved. For until Florida's jurisdiction is shown to be vulnerable, Vermont may not relitigate the issue of domi-

cile on which the Florida decree rests. It was said on argument that the first husband appeared in the Florida proceeding. But the record does not contain the Florida decree nor any stipulation concerning it.

We deal only with the presumption, not with the issues on which the Vermont court made its findings. We also reserve the question, discussed on argument, whether respondent would now be in a position to attack the Florida decree collaterally if it were found to be collusive and he participated in the fraud.

The judgment is reversed and the cause is remanded to the Supreme Court of Vermont for proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE BURTON concurs in the result.

MR. JUSTICE FRANKFURTER, dissenting.

Concededly, when a Florida court, on September 10, 1943, purported to grant a decree of divorce to the petitioner, then Mrs. Albert Mann, she secured the decree "by deceiving the Florida Court as to the facts of her domicile" in that she "went to Florida for the express purpose of getting a divorce" and without any "intention to live and remain in Florida," whence she departed immediately on securing her decree. Therefore, the Full Faith and Credit Clause does not require Vermont to respect this Florida decree, unless Mr. Mann has been served in Florida or had personally participated in the Florida divorce proceeding. If there were fair doubt that Mrs. Mann's husband had subjected himself to the jurisdiction of the Florida decree, the things which it imports would not have been undermined and Vermont would have to respect it.

It is the view of my Brethren that the Vermont Supreme Court held the Florida decree to be a nullity, although

it "recognized that there were no findings on those issues in the present record"—the issues being, whether petitioner's husband "was served in Florida [or] made an appearance in the case." If this were what the Vermont Supreme Court "recognized" I' would join my Brethren. But so to read what the Vermont Supreme Court wrote is to misread. In its own Vermont way, the Vermont Supreme Court wrote just the opposite. Referring to the second *Williams* case, 325 U. S. 226, the Vermont Supreme Court went on:

> "It was there held that the question of bona fide domicile was open to attack, notwithstanding the full faith and credit clause when the other spouse neither had appeared nor been served with process in the state. The findings here do not show either of these criteria." *Cook* v. *Cook,* 116 Vt. 374, 378, 76 A. 2d 593, 595.

In the light of the whole record, is not the meaning of this, however obliquely expressed, that the circumstance was wanting which alone would have given the Florida court jurisdiction over Mrs. Mann's suit, namely, Mr. Mann's submission to it? A fair reading of this record implies that the Florida decree was neither consented to nor contested by Mann. In such circumstances, it would be formalism of the most arid kind if a State in a third-party proceeding may deny full faith and credit to an *ex parte* divorce fraudulently secured by a spouse in a sister State only if it makes formal findings that such an *ex parte* fraudulent decree was obtained without the jurisdictional participation of the husband.

If Mrs. Mann did not have a Florida domicile and her husband did not submit, under the *Sherrer* doctrine, 334 U. S. 343, to the State's jurisdiction, Florida had no power to terminate the marriage. If there was no jurisdiction to grant a divorce, there was no divorce. The sham di-

vorce was a nullity, no more binding on the Vermont courts than would have been a private letter to the lady by the local Florida judge. And while Vermont could, if that State chose, deny relief to Cook because of his "unclean hands," the Constitution of the United States has nothing to do with that defense.

It is important to remember that throughout this proceeding the petitioner here appeared personally and was represented by counsel. The findings of the Windsor County Court were based on "a consideration of the statements of counsel, oral testimony and the exhibits in the case." The findings are inescapable that the Florida decree was a cooked-up affair not between Mr. and Mrs. Mann but between Mrs. Mann and Cook. "Florida was chosen as the place where the divorce was to be obtained because Florida would be the nearest and best place to secure a divorce." All this took place two months after Mrs. Mann and Cook had supposedly been married, when he discovered she was the wife of Mann. The present proceedings, begun in December, 1949, did not come to issue until March, 1950, the findings of fact were made in May, 1950, and the case disposed of by the Supreme Court of Vermont in November, 1950. The Florida decree was urged as a defense against the prayer for a declaration of annulment on two grounds, as one reads the record, and two grounds only: unclean hands and condonation—unclean hands in that Cook cooperated with Mrs. Mann in deceiving the Florida court as to the falsity of her domiciliary claim; condonation by conduct on Cook's part subsequent to, and with knowledge of, Mrs. Mann's fraudulently obtained divorce decree.

It is important to remember that the judgments of the Windsor County Court and of the Supreme Court of Vermont came two years after this Court's decisions in *Sherrer* v. *Sherrer, supra,* and *Coe* v. *Coe,* 334 U. S. 378. These were not puss-in-the-corner adjudications. It is

inconceivable that the Vermont courts did not know
that the fraudulent claim of domicile by a divorcing
spouse is irrelevant to the enforceability in sister States of
a decree of divorce if the other spouse contests or consents
to the proceeding leading to the decree. When the Su-
preme Court of Vermont in 1950 finds a decree of divorce
to have been fraudulently obtained by a spouse and says
that there are no findings that the other spouse had either
appeared or been served with process, and rejects the
claim that the divorce decree must be respected by reason
of unclean hands or condonation, plainly part of the case
is the assumption that this was not a *Sherrer* v. *Sherrer*
or *Coe* v. *Coe* situation. An issue which is established
by the assumptions in a litigation is as truly established
as though put into words.

In view of what this record discloses—the explicit find-
ings as to the fraudulently prearranged divorce from the
husband between a wife and her putative husband, the
issues that were tendered in the personally contested pro-
ceeding for annulment of marriage by the disillusioned
third party, the charges of unclean hands and condonation
as grounds on which the wife sought to rely on the divorce,
the only issues thus tendered to the Vermont courts and
their disposition two years after *Sherrer* v. *Sherrer* and
*Coe* v. *Coe*—to hold that there must be a finding in
explicit words that Mann did not appear in the Florida
proceedings is to go back to the days antedating Baron
Parke, when certain words in the law were indispensable.
Not to use them was fatal. The Florida decree is not
set forth in the record before us. For all we know, the
decree may recite the non-appearance of Mann. And
yet the Vermont Supreme Court is reversed on the un-
warranted presumption that Mann appeared in the
Florida suit.

The case now goes back to Vermont. It would not
be surprising if, in the proceedings to follow, it will be

formally established that inasmuch as Mann was neither served nor appeared in Florida the decree was a nullity, to which the Constitution of, the United States does not require obedience from Vermont. I am not one of those who think that procedure is just folderol or noxious moss. Procedure—the fair, orderly and deliberative method by which claims are to be litigated—goes to the very substance of law. But to deny the meaning of what lies on the surface of a record simply because it is ineptly conveyed is to revert to archaisms and not to respect essentials.