Matthew M. Levy, J.
The parties were married to each other in New York in February, 1952. This is the second marriage for each of them. The present suit is for a separation by wife against husband. It is based upon the defendant’s alleged cruel treatment of the plaintiff and his alleged failure adequately to provide for her. In his answer, the defendant denied the allegations of cruelty and nonsupport, and interposed a counterclaim for annulment of his marriage to the plaintiff on the ground that at the time of their marriage the plaintiff was still married to another, from which other she had not been validly divorced. The case was fully tried before me in respect of all of its aspects, but, since a valid marriage to the defendant is a prerequisite to the maintenance of plaintiff’s action for separation, I shall consider first the problems presented by the defendant’s counterclaim.
On March 31, 1950 the plaintiff obtained a divorce from her then husband, one Moss, in the Superior Court of Richmond County, State of Georgia, representing herself to the Georgia court as having been a resident of that State for more than one year prior to the institution of her action. Actually, the plaintiff was a resident of New York at the time. She spent only a few days in Georgia, having gone there for the purpose of obtaining a divorce and for no other, and she did not establish a residence in Georgia. Her husband, Moss, subjected himself to the personal jurisdiction of the Georgia court in that suit by duly acknowledging service and appearing in the Georgia action through an attorney, who, in pursuance of instructions from Moss, denied the charges of his wife’s complaint, but did not contest the action for divorce. The record *887 of the Georgia court indicates that the final decree of total divorce was granted the plaintiff against Moss on March 31, 1950. Subsequent thereto, Moss took unto himself another spouse.
The Federal Constitution (art. IV, § 1) provides that “ Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State ”. Recently, several United States Supreme Court cases have delt with 1‘ the controlling effect of the clause on state proceedings subsequent to divorce decrees in other states ” (Johnson v. Muelberger, 340 U. S. 581, 585), and, in order to arrive at a proper determination of the issue at bar, I find it necessary, at the outset, to study the full purport of the principal rulings.
First is the first decision in Williams v. North Carolina (317 U. S. 287). There, it was held that the unquestioned domicile in a State of one party to the divorce enabled that State to exercise its power over the marital relationship, and that the divorce granted must be respected in all other States, although the other spouse had neither appeared nor had been served with process in the rendering State and although the recognition of such a divorce was contrary to the public policy of any other State. In the second Williams case, however, a sister State was held free to determine whether there was such domicile in fact as to give the divorce court jurisdiction to render an ex parte judgment of divorce (Williams v. North Carolina, 325 U. S. 226). On the other hand, in Sherrer v. Sherrer (334 U. S. 343) the court held that its decision in Williams II did not permit such collateral attack on the decree of the court of the rendering State on jurisdictional grounds “ where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the court of the State which rendered the decree.” (334 U. S. 351, 352; see, also, Coe v. Coe, 334 U. S. 378.) In Johnson v. Muelberger (340 U. S. 581, supra) the court extended these principles to encompass third-party attack, and held that not only would the Full Faith and Credit Clause bar a party who had been personally served or who had entered a personal appearance from collaterally attacking the decree, but also ruled (340 U. S. 587) that a “ stranger ” to the proceedings [in the rendering State] would be similiarly barred if “ the party attacking would not be permitted to make a collateral attack in the courts of the granting state.” In its summation of the law at the end of its opinion the court said *888 that ‘ ‘ When a divorce cannot be attacked for lack of jurisdiction by parties actually before the court or strangers in the rendering state, it can not be attacked by them anywhere in the Union” (340 U. S. 589). In Cook v. Cook (342 U. S. 126) (where a second husband attacked the divorce decree his wife had obtained from her prior husband) the court made clear that Williams II had not been overruled, and that, if the spouse against whom the divorce decree had been obtained had neither appeared nor been served in the rendering State, the issue of domicile could be reopened; however, the court held that, if there had been such appearance, then the second husband could not collaterally attack the decree obtained against the prior husband ‘ ‘ unless ’ ’ the rendering State ‘ ‘ applies a less strict rule of res judicata to the second husband than it does to the first.” (342 U. S. 126, 128.) Thus, under Johnson v. Muelberger, where there was an appearance (as in the instant case), third-party attack by a “ stranger ’ ’ is precluded if it would not have been permitted by the rendering State; and, by virtue of Cook v. Cook, a subsequent spouse is included within the classification of “stranger”.
I hold, therefore, that the defendant in the case at bar — the plaintiff’s second spouse — cannot, in the instant action, attack the decree that his wife had obtained from her former husband in the State of Georgia, unless the Georgia courts would permit such an attack by the defendant in Georgia. Although the principle of the rule thus enunciated — that is, that collateral attack upon the Georgia decree would be permitted here only if Georgia would permit such an attack in that State — appears to be quite simple, the evidence adduced at the trial before me and the arguments presented by counsel indicate that its application in the case at bar is of some difficulty.
WThen a fraud is perpetrated upon the court of another State so as to induce that court in a divorce action to exercise its jurisdiction over a matrimonial status nonexistent in that State and over persons who are in fact nondomiciliaries thereof, the parties are by hypothesis domiciled elsewhere, and they will normally return to the State of their actual residence after acquiring the divorce. If either or both of the parties subsequently remarry and the validity of their prior divorce comes into question, the forum of litigation and determination will rarely be in the courts of the State which rendered the divorce decree. The result is a dearth of precedential authority as to exactly how the divorcing jurisdiction would rule if an attack were made upon the divorce rendered in that State. And it *889 is clear that it is the law of Georgia which we must examine, and not the law of New York or of any other jurisdiction, to determine whether the defendant under the existing circumstances may successfully attack the divorce decree his wife obtained against her prior husband in the State of Georgia.
In Matter of Bourne (142 N. Y. S. 2d 777, 780, revd. on other grounds 2 A D 2d 896), the court was considering an attempt to impeach a Florida decree. The court stated that “We should also bear in mind that any New York case construing the internal law of a State other than -Florida, for instance, Nevada, where a divorce was obtained that is subsequently sought to be collaterally attacked, would have no relevancy in this proceeding.” • This view is supported by Bruce v. Bruce (129 N. Y. S. 2d 454), where a wife in New York sought to declare invalid a Georgia divorce decree which her husband had obtained against her, and the court, citing Johnson v. Muelberger (supra), stated at page 456: “ Since the plaintiff here submitted to the Georgia jurisdiction through the execution of the notice of appearance, which was filed in the action, and the Georgia decree rests thereon, her remedy as to the decree’s validity based on the husband’s alleged non-residence, must be relegated to the Georgia court for proper determination in accordance with the Full Faith and Credit Clause of the Federal Constitution ”. That is not to say, if there were any authoritative New York cases indicating what the Georgia law is, that I should not be guided by them. What I do say is that I am unable to follow counsel when they fail to note that the New York decisions relied upon by them, and in which was discussed the problem of ascertaining and interpreting the law of the divorce State under the rule of Johnson v. Muelberger (supra), all involved Florida divorces and, therefore, the courts, in arriving at these decisions, were able to rely upon the authorities cited in the Johnson case, which involved a Florida divorce; and, in addition, the courts in those cases could rely upon the Johnson opinion itself insofar as it undertook to state the law of Florida. For it must, of course, be recognized that the law of Florida on the subject (de Marigny v. de Marigny, 43 So. 2d 442) is not necessarily the law of Georgia.
Foreign law is now treated as a matter of law in this State (Civ. Prac. Act, § 344-a, subd. B). And, ordinarily, I might take judicial notice of the law of another State (Civ. Prac. Act, § 344-a, subd. A, par. 1; Mangrelli v. Italian Line, 208 Misc. 685, 688). But the kind of notice upon which I should like to *890 base my judicial cognizance is unhappily unavailable on the point here in issue, i.e., whether, under Georgia law, collateral attack by the defendant would or would not be permitted in that State upon the decree in question — for I could find no precise decision in Georgia on the point. In Richards v. Richards (2 Misc 2d 596, 598) where New Jersey law was involved, uncontroverted testimony of a New Jersey lawyer was presented “ to the effect that a collateral attack would be permitted in New Jersey ”. In the instant case, however, each party vouchsafed a Georgia attorney as an expert witness as to the Georgia law on the subject, and the two attorneys expressed diametrically contrary opinions as to whether or not Georgia would permit the defendant collaterally to attack the instant Georgia decree. Neither attorney submitted any specific judicial authority in Georgia to support his conclusion on this point, nor indeed did the parties; and, as I have indicated, independent research on my own part was equally nonproductive. I recognize, however, that, should there in fact be a total lack of authority emanating from the divorce State, the court of the forum would nevertheless be compelled to reach some conclusion. How, then, is the problem to be resolved when it is the foreign law that is controlling— and there is no direct authority as to what that foreign law is, and if, in addition, there is a conflict in the testimony of responsible witnesses as to that law?
I suppose I could attempt, on the basis of passing upon the credibility of one or the other of the expert witnesses who testified before me, to arrive at a conclusion as to what the law of the rendering State is — and let it go at that. But I think that such an approach would not comply in spirit with the mandate of the Full Faith and Credit Clause — for in such case, it may be that the most insubstantial evidence could be used to thwart the command of the Federal Constitution.
Another possible method of dealing with the problem is suggested by the dictum in Matter of Veltri (202 Misc. 401) where the court expressed the opinion on page 408 that the petitioners could, “ On general principles ”, attack the decree in the State which rendered it, since there was no controlling determination in that State which would appear to forbid such an attack. It seems to me that this approach gives inadequate faith and credit to the constitutional principle which requires me to give the same validity to the decree of another State as it would have in the State which rendered the decree. And, as I see it, of primary importance in endeavoring to resolve this issue and in interpreting the basic proposition stated by *891 the Supreme Court of the United States is the spirit of the mandate of the Full Faith and Credit Clause itself.
Nor can the mere lack of jurisdiction in the divorce State, without more, lend any weight to the proposition that the decree is vulnerable to collateral attack. The rule here involved assumes the possibility of the basic failure of jurisdictional facts. That does not negate the further requirement of the rule that a positive showing be made that the decree could be upset at the behest of a stranger to the divorce suit. The argument of the defendant to the effect that the jurisdiction of a court can always be attacked collaterally to show that its decision was void is of no moment. For it was undisputed in Johnson v. Muelberger (supra) that there had not been compliance with the Florida residence statute and the Supreme Court assumed that there was no jurisdictional basis for the Florida divorce. To the extent that they are inconsistent with the ruling of the United States Supreme Court in the Johnson case, the New York cases cited by the defendant are of no authority, and those cases decided in this State subsequent to Johnson v. Muelberger have fully acknowledged the rule of that case. (See, e.g., Widera v. Widera, 113 N. Y. S. 2d 127 and Caswell v. Caswell, 111 N. Y. S. 2d 875, affd. 280 App. Div. 969.)
In the circumstances, I am driven to making a choice between virtually negating the Johnson ruling by holding that the instant attack is permissible, for it has not been clearly established that the divorce State would prohibit it, or of broadening the scope of the Johnson case by requiring the assailant to prove that the State which rendered the decree would permit the attack by him. I see no middle or other ground. I have come to the conclusion that the proper view is the latter —: that the burden should be placed upon one who would assail the decree of a sister State to prove that, under the laws of that State, he would be permitted to attack the decree. That view, I think, is more in keeping with the command of the Constitution; and it finds support in the language of the opinions — albeit not in the definitive decisions — of the United States Supreme Court. For example, in Cook v. Cook (342 U. S. 126, 128, supra) the court said that ‘ ‘ the burden of undermining the decree of a sister state ‘ rests heavily upon the assailant’”, quoting from Williams v. North Carolina (325 U. S. 226, 233-234, supra). And in Vanderbilt v. Vanderbilt (354 U. S. 416, 426) the dissenting opinion of Mr. Justice Fbaetketjetee pointed out that exceptional circumstances must be present in the form of *892 an overriding policy of the forum State which makes the foreign judgment “ obnoxious ” (see, also, Matter of Stillwell, 9 Misc 2d 728; Kienle v. Kienle, 201 Misc. 948).
Georgia is a so-called “ Code State ”, and several provisions of the Georgia Code are cited by the defendant on the issue of the permissibility of collateral attack. The defendant relies primarily upon section 30-107 of the Georgia Code, Ann. That section (as it was in 1950, when the plaintiff procured her divorce from her then husband) establishes the requirement of one-year residence in order to obtain a valid divorce in that State. But this statute avails the defendant naught, since it signifies merely that the divorce court did not have jurisdiction to issue the decree. That, by hypothesis, is not in issue. The question is not whether the Georgia court had jurisdiction over the marital res. or over the persons of the parties to the suit for divorce in that State, but whether the doctrines of conclusiveness-of-judgment and of full-faith-and-credit combine to prevent the defendant, a stranger to the suit, from impairing the decree issued by that court.
Two other code sections are cited by the defendant. One provides that “ [a] void judgment may be attacked in any court and by any person. In all other cases judgments may not be impeached collaterally, but must be set aside by the court rendering them” (Ga. Code, Ann., § 110-701). The other provides that “ [t]he judgment of a court having no jurisdiction of the person or subject-matter, or void for any other cause, is a mere nullity, and may be so held in any court when it becomes material to the interest of the parties to consider it ” (Ga. Code, Ann., § 110-709). These statutes contain brief and sweeping generalities. In order to determine under what circumstances and to whom they would apply, and, more specifically, whether a ‘ ‘ stranger ” to a suit for divorce could upset the final decree therein issued, an analysis of the meaning and effect of these statutes, as established by the Georgia courts, is required.
We first note the general distinction which the courts of that State have drawn between an independent factual determination that a court lacked jurisdiction, and lack of jurisdiction which appears on the face of the record. The word “ void ”, as used in the Code, contemplates lack of jurisdiction appearing on the face of the record, which, to use terminology frequently employed by the Georgia courts, is “ absolutely void ”. Assuming a jurisdictional defect in the latter category, there is no doubt that the judgment is a nullity, and may be so considered by any person whenever it is to his interest so to consider it.
*893 In Jones v. Smith (120 Ga. 642) the petitioners, who were being sued by the administrators of an estate for the recovery of land, instituted a separate proceeding in the Court of Ordinary (probate court), asking that the judgment appointing these administrators be set aside. The petitioners then requested an injunction in the action which had been brought against them to restrain the prosecution of that action until the Court of Ordinary had an opportunity to set aside the judgment of appointment. The petitioners contended that the judgment appointing the administrators was void, since the latter were residents of New York State, as the decedent had been, and that, under Georgia law, only Georgia residents could qualify as administrators — unless the decedent was a resident of Georgia. Such, indeed, was the Georgia law (Ga. Code of 1895, §§ 3365-3366: now Ga. Code, Ann. §§ 113-1203). Nevertheless, although it apparently appeared on the face of the record that the two administrators were not Georgia residents, the court refused the injunction because the record did not “ distinctly show ” that the decedent was a nonresident. The court said (pp. 644-645): “ The court of ordinary is a court of general jurisdiction, and it is not essential that all the facts necessary to give jurisdiction shall appear upon the face of the record. Where the record is silent, the presumption is that all necessary jurisdictional facts appeared, and no collateral attack can be made upon the judgment * * * On the other hand, where the want of jurisdiction appears on the face of the record, the judgment, although by a court of general jurisdiction, is void, and is subject to attack at any time by any one whose rights are sought to be affected thereby * * * [T]hen the judgment appointing them as the legal representatives of the estate would be absolutely void, there being no authority to appoint a nonresident administrator upon the estate of a non-resident. The record does not distinctly show that Lamar [the decedent] was a non-resident. In fact the statements in the record are equivocal * * * The presumption being in favor of the validity of the judgment, this ambiguity will be relieved by a construction which makes him a resident of this State at the time of his death. Such being the case, the judgment áppointing the Joneses [the administrators] was not void. * * * The judgment appointing the Joneses administrators on the estate of Lamar being regular upon its face, it can not be collaterally attacked.”
As I read it, Jones v. Smith (supra) is significant here in that it prevented one who did not have an existing interest at *894 the time of judgment from attacking that judgment, since it was not void on the face of the record, and also (as will hereinafter again be adverted to) the court applied a rigid standard for determining whether or not the lack of jurisdiction did appear on the face of the record within the Georgia rule. These principles have been adhered to in cases involving attacks on divorce decrees where the jurisdiction of the divorce court is alleged to have been based upon the fraudulent representations of a party or both parties to the divorce (Gates v. Gates, 197 Ga. 11; Jones v. Jones, 181 Ga. 747). Drake v. Drake (187 Ga. 423) involved an attempt to impeach the jurisdiction of the court of another State (Florida) which had granted a divorce to parties who allegedly had been Georgia residents. The Georgia court considered itself obliged by the Full Faith and Credit Clause of the Federal Constitution to give to the decision of the divorce court “ the same force and effect as if it had been rendered by a Georgia court ” (p. 432), pointing out that sections 110-701 and 110-709 of the Georgia Code had to be reconciled with ‘ ‘ the law of res judicata ’ ’ and ‘ ‘ the doctrine of estoppel by judgment” (pp. 430, 431). In Dyal v. Dyal (187 Ga. 600) the court denied a wife’s application for alimony, her husband having previously obtained a divorce decree in a Florida court which, on its record, had personal jurisdiction of both parties, although the wife claimed in Georgia that the husband’s Florida domicile had not been bona fide. These cases are prior to Johnson v. Muelberger (supra) but their authority on the point now under consideration has not been affected.
There is a constitutional requirement in Georgia making proper county venue in that State a jurisdictional matter in divorce suits, and I think it appropriate at this point to discuss that provision and the judicial determinations thereunder — for it seems to me, by way of similarity, to be substantial authority in aid of the solution of our problem. Article VI (§ XIV, par. 1) of the Georgia Constitution (Ga. Code, Ann., § 2-4901) provides that: ‘ ‘ Divorce cases shall be brought in the county where the defendant resides, if a resident of this state; if the defendant be not a resident of this state, then in the county in which the plaintiff resides ”. The Georgia courts have consistently held that these constitutional provisions are “ mandatory and exhaustive, and have no qualification which authorizes jurisdiction to be conferred by consent or otherwise; and that, where both parties are residents of this State, a divorce is invalid unless the suit is brought in the county where the defendant resides” (Musgrove v. Musgrove, 213 Ga. 610; see, also, Watts v. Watts, 130 Ga. 683; Moody v. Moody, 195 Ga. 13; *895 Haygood v. Haygood, 190 Ga. 445; Darbie v. Darbie, 195 Ga. 769). “ This provision of the Constitution states indispensable essentials for jurisdiction ” (Gates v. Gates, 197 Ga. 11, 17, supra). As I see it, therefore, the Georgia cases involving attempted impeachment of Georgia divorce decrees on the ground that they were brought in the incorrect county reasonably form the basis for adequate analogy in determining what disposition would most likely be made in Georgia of a case brought by a nonresident of that State were he to attack a decree which had been obtained through a fraudulent representation as to residence in Georgia, which residence was a prerequisite to the exercise of jurisdiction of the divorce court.
The rule established by a uniform line of Georgia precedents is that neither party who subjected himself to the personal jurisdiction of the court in the original action may assert at a later time that the original judgment is a nullity because the jurisdictional requirement of proper venue was absent in the divorce proceeding, where such defect does not appear on the face of the record. Petitions to set aside such prior divorce judgments were accordingly not permitted in McConnell v. McConnell (135 Ga. 828); Fuller v. Curry (162 Ga. 293), and in Davis v. Davis (191 Ga. 333). In Musgrove v. Musgrove (213 Ga. 610, supra) the court held that a former wife failed to state a cause of action in equity against her ex-husband to vacate a decree of divorce procured against her in the wrong county pursuant to an agreement which was a fraud upon the court as to venue, and allegedly as to her, but to which agreement and divorce she had consented. And where the husband, a party to the action for divorce, instead of seeking directly to set aside the decree, defended against contempt proceedings which sought to enforce payment of the alimony awarded by the court which purportedly had no jurisdiction, the court held the defense invalid (Bilbo v. Bilbo, 167 Ga. 602). The bases for the holdings are variously called “estoppel”, “ unclean hands” or “ res judicata ”, depending upon the particular facts presented. In Johnson v. Johnson (188 Ga. 800) a party who had not admitted the appropriateness of the jurisdiction in the initial proceeding, but had contested it, was not allowed to relitigate the issue of jurisdiction of the divorce court — thus negating any estoppel aspect.
The rule which prevents a party from attacking a Georgia divorce decree as void for want of the jurisdictional fact of proper venue, in the absence of the imperfection appearing on the face of the record, similarly precludes either party from challenging the jurisdiction of the Georgia court which rendered *896 the decree on the ground that the plaintiff in the divorce action fraudulently misrepresented that he was a domiciliary of Georgia who had fulfilled the State’s one-year residence requirement. In Crenshaw v. Crenshaw (198 Ga. 536) the court, relying upon those cases which involved attacks upon divorce decrees based upon fraudulent misrepresentation of venue, held that even such a misrepresentation as to domicile which does not appear on the face of the record will not render the divorce decree “void”, as that term is used in the Georgia statutes, so as to enable any party at any time to avoid the effects of a jurisdictionally void decree. The court said (p. 536): “ Where a husband filed against his wife, in the superior court of Fulton County, a suit for total divorce on the ground of cruel treatment, alleging that he was a bona fide resident of Georgia and had been for more than twelve months before instituting the action, and that his wife was a resident of Illinois, and where the wife appeared and filed an answer denying the allegations of the husband as to his residence in Georgia, and further denying his allegation as to cruel treatment, and where upon the pleadings as thus framed two verdicts at different terms of the court were returned, each finding for the plaintiff a total divorce, and a decree of total divorce was thereupon entered in his favor, a proceeding filed by the wife at a subsequent term of the court, showing the facts above stated, and seeking to have such verdicts and judgments set aside on the ground that the husband was in fact a non-resident of Georgia at the time of instituting his action for divorce, and that his claim of residence in Georgia constituted a fraud both on the defendant and on the court, was subject to demurrer as showing a previous conclusive determination of the issues as to residence and jurisdiction, in the absence of any averment indicating that the wife did not know the facts touching these issues or could not by due diligence have discovered them in time to present them to the court before the final verdict in the divorce action. * # * Notwithstanding the State has an interest in all divorce eases * * * the wife, as the party attacking the verdicts and judgment, was not relieved of their conclusiveness merely because they were rendered in a divorce case. Nor was she entitled to set them aside except under rules applicable to such attacks generally.”
For the purpose of determining whether there is sufficient basis in any case for permitting an attack on a judgment of divorce, two conclusions follow from what has already been stated as to the Georgia Constitution, Code and cases. They are: (1) that fraudulent misrepresentation as to Georgia *897 domicile will be treated in like manner as misrepresentation as to county venue in Georgia and (2) that the word “ void ”, in its applicable context, connotes a jurisdictional failing which is apparent from the face of the record. Each of these conclusions is buttressed by the cases which permit the party against whom a divorce decree was secured to attack the decree as “ void ”, where (1) there is a failing of proper venue only, and (2) such error is revealed on the record of the divorce decree. Thus, in Gates v. Gates (197 Ga. 11, supra) proper venue meaning some county in Georgia within which the husband’s place of residence was located, the husband had obtained a divorce in the Superior Court of Harris County, alleging that he was stationed at Fort Benning, Georgia. But the geographical fact was that the Fort Benning reservation did not touch Harris County at any place. The defect thus appearing upon the face of the record, the court refused to dismiss the wife’s subsequent attempt to set aside the divorce decree. In Jones v. Jones (181 Ga. 747, supra) the husband, a resident of Bibb County, Georgia, had filed suit for divorce in that county, alleging that his wife was a nonresident of Georgia. (It will be recalled that, if defendant were a nonresident, the proper venue would be the county of residence of the plaintiff, rather than defendant’s county of residence, which it would be if defendant were a resident of Georgia.) The wife instituted a cross action, in which she denied being a nonresident of the State; she was successful and obtained a divorce decree awarding alimony. Four years later, the husband successfully resisted an application of the wife for alimony arrearage, on the ground that the divorce suit (pursuant to which the alimony had been granted) was void, since the wife had in fact been a resident of Fulton County, Georgia, and not a nonresident of the State at the time she won a verdict in her cross action in Bibb County.
It would seem logical to conclude that the holdings that the statutory word “ void ” means “ void on the face of the record ” would not change merely because the plaintiff in the subsequent action had not participated in and had no then existing interest in the original proceeding; and that this conclusion would be reached whether jurisdictional domicile or jurisdictional venue be the basis of the attack. Indeed, there is authority in support of that conclusion. In Thomas v. Lambert (187 Ga. 616) the heirs of a deceased second spouse, who naturally had not been a party to the divorce decree his wife had obtained from her first husband, were not permitted to attack the divorce decree for the purpose of administering the estate as against the widow. The syllabus by the court is divided into two parts, *898 the first denying the collateral attack on the judgment, and the second part negating the possibility of a direct attack being permitted. The court’s opinion which follows the syllabus says that it is entirely concerned with the second division of the syllabus (direct attack), the first part being considered self-explanatory (on the question of collateral attack). The rule of law stated in the first division of the syllabus is the general proposition which underlies the Georgia law of judgments: u A domestic judgment can not be collaterally attacked as void, unless its invalidity appears on the face of the record.”
In Phillips v. Phillips (211 Ga. 305) the plaintiff similarly alleged that improper venue in the divorce proceeding rendered the decree issued by the divorce court void. The plaintiff was the minor child of a now-deceased father, who had obtained the divorce decree from the child’s mother. The court held that the plaintiff had no right to have the divorce decree set aside for' the fraud which his father practiced upon the court in procuring the decree, since (p. 308) “ none but the parties to a judgment valid on its face can move directly for its nullification, that is, that ‘ a third person not a party to the record can not go into a court and move to set aside a judgment which is not against him.’ ” In an attempt to remove himself from the “ stranger” category, the plaintiff further contended that he could question the validity of the judgment since he was in “ privity ” with a party to the judgment. The court, after explaining (p. 309) that “ the privity either in law, in fact, or in estate, which will permit one to attack and thus question the validity of a judgment to which he is not a party has no personal basis as a mere matter of sentiment, but rests upon some actual ‘ mutual or successive relationship as to the same right of property ’ ” (quoting from Thomas v. Lambert, 187 Ga. 616, 618, supra), stated that even if the plaintiff were able to claim privity status he would be estopped from assailing the validity of the decree, since his father would have been estopped.
The Phillips case, applying to direct attempts to set aside a judgment, combines with Thomas v. Lambert (supra) to negate the possibility of a person in the position of the defendant in the case at bar nullifying in Georgia the divorce decree his wife had obtained against her former husband in that State, if the ground for the attack were jurisdictional venue. As I view it, the statutory word “ void ” means “ void on the face of the record ” as much as against a “ stranger ” as it does as against a party, and the result is the same whether jurisdictional domicile or jurisdictional venue is the basis for the attack.. This view is substantiated by Martocello v. Martocello (197 Ga. 629) *899 where the husband sued in equity to cancel a divorce decree obtained by his wife from her former husband. The plaintiff alleged that his wife and her first husband were both residents of North Carolina at the time that the wife filed suit in a Georgia court falsely representing to the court that she was a bona fide resident of Georgia and had been such for 12 months. The plaintiff contended that the Georgia court actually had no jurisdiction over the case, and that, therefore, the decree of total divorce granted to his wife was void. He attempted to circumvent the rule of Thomas v. Lambert (supra) by urging that he had a direct interest in the decree which his wife had obtained from her first husband since he had become the creditor of his wife to the extent of the alimony he had been paying her and which he claimed he was entitled to recover back because his wife had not possessed the legal capacity to marry him, since her divorce from her prior husband was void. The court rejected this argument, saying, at pages 632-633, that “ an attack on a judgment regular on its face must be taken as collateral, where the petitioner, as a stranger to the previous record, merely claims to have become incidentally interested therein after a termination of that case. ’ ’ (See, also, Hicks v. Hicks, 186 Ga. 362.)
The defendant urges that the Georgia courts would permit him successfully to attack the divorce decree because of the absence of a jury trial, which is said to be required under Georgia law, and that such defect renders the decree void on its face since there is no indication in the record that the case was tried by a jury. The defendant’s contention is based upon section 30-101 of the Georgia Code, which, as amended in 1946 and in effect in 1950, read as follows: ‘1 Divorce, how granted. Total divorces in proper cases may be granted by the superior court. Unless an issuable defense is filed, or a jury trial demanded in writing by either party on or before the call of the case for trial, the judge shall hear and determine all issues of law and fact in all petitions for divorce and permanent alimony, and any other issues made in the pleadings. If a verdict or judgment is rendered authorizing the grant of a total divorce or for total divorce and permanent alimony, the verdict or judgment shall not become final for a period of thirty days ”.
I hold that the defendant must fail in this effort to impeach the Georgia decree because there is no showing of any kind that the absence of a jury in the divorce proceeding would induce the Georgia courts to permit him to attack the judgment. Even if I were to assume that it is evident from the record that no jury was present at the hearing or trial of the divorce action, *900 I am not convinced (1) that the failure to obtain a jury verdict is a defect, or (2) if irregularity it was, that it is one which affected the jurisdiction of the court to render the decree.
Whereas the decisions of the Georgia courts are replete with statements to the effect that venue is a jurisdictional requirement in a divorce proceeding, there is no suggestion in any case or statute that the absence of a jury would render a divorce decree void, where the cause was placed by agreement of the parties upon the consent calendar for disposition and the parties waived a jury trial. For example, in Tatum v. Tatum (203 Ga. 406) at pages 407-408, the court expressly mentions the procedures which are unique to the divorce law in the State of Georgia, such as the jurisdictional requirement of venue, but no indication of the existence of any mandatory, nonwaivable necessity of trial by jury is stated.
As opposed to this lack of authority to aid the defendant’s contention, there are a number of decisions indicating that non-ex-parte divorce cases in Georgia are regularly decided without the presence of juries. Thus, in Phillips v. Phillips (211 Ga. 305, supra) where a third party unsuccessfully attempted to have the divorce decree of Ms parents set aside, the court, in setting forth the procedural facts in relation to the granting of the divorce decree, stated at page 306: “ The judge tried the case without a jury and granted the divorce which Phillips prayed for.” In Dixon v. Dixon (204 Ga. 363) the court held that there were not u good and sufficient grounds ” for setting aside a divorce decree under Code section 30-101 within the 30-day period before it had become final, although the court stated in its opinion (p. 363) that “ pursuant to an agreement of counsel for both parties a consent decree was entered on March 31, 1948, by the court, presiding without a jury”. To this, I may add the testimony of the plaintiff’s expert witness on Georgia law — uncontroverted in this respect (see Richards v. Richards, 2 Misc 2d 596, supra) —to the effect ¿hat he witnessed many Georgia divorce cases in wMch there was no trial by jury. I conclude that this was the normal procedure in Georgia divorce cases, at least in respect of those where trial by jury was waived by the parties.
The statute which, according to the defendant, necessitated a jury trial states merely that the judge should decide all issues of law and fact “ unless an issuable defense is filed, or a jury trial is demanded in writing ” (Ga. Code, § 30-101). This legislation does not in terms require a jury trial, and although it may, in certain circumstances, appear to contemplate one (see Dugas v. Dugas, 201 Ga. 190) there is no reason to infer *901 from its language that it was error for the court to decide the case without a jury where both parties to the action consented to such a procedure. The Constitution gives to the Superior Courts of Georgia exclusive jurisdiction of divorce cases, with authority to hear and determine “ any matter or issue, where a jury verdict is not required, or may be waived ” (Ga. Const., art. VI, § IV, par. VIII; see Ga. Code, Ann., § 2-3908). Thus, the right to permit the parties to waive a jury trial, at least in some cases where it is “ required ”, is expressly recognized to be within the authority of the Superior Courts.
In Chappell v. Small (194 Ga. 143), which concerned a problem unrelated to the type we are now considering so far as the facts of the case are concerned, it was stated (p. 146) that the parties may impliedly waive the right “ to have the issues of fact raised by the pleadings passed upon by a jury.” In Estes v. Estes (192 Ga. 94), while an action for divorce was pending, the parties entered into a separation agreement providing for alimony payments to the wife, which agreement was made the judgment of the court. However, the final decree entered at a subsequent term of the court did not refer to the alimony payments, and the husband contended as a defense to an application to compel the payment of alimony pursuant to the judgment that, since the alimony agreement was not embodied in the final verdict of the jury granting the divorce, alimony could not be enforced against him. The alimony was authorized by statute to be granted pursuant to section 30-101, and to section 30-209 of the Georgia Code, providing that “ [t]he jury rendering the final verdict in a divorce suit may provide permanent alimony for the wife”. In essence, the point made was that there was no jury verdict awarding the alimony as part of the general divorce decree which had been granted by the jury. The court held that the consent of the parties and the action of the Trial Judge sufficiently avoided any necessity for a jury, saying (p. 98): “ ‘ Consent cures all errors, not going to the jurisdiction of the court, and obviates the necessity of proof, or of a verdict or findings. It is a sufficient waiver of trial by jury. ’ ” (quoting from 34 C. J. 132, § 332). This would also seem to indicate that the court did not consider the alleged error as one which could be considered to be jurisdictional. The Georgia court also rejected an attack upon a decree of alimony which had been granted pursuant to section 30-213 of the Code (providing for alimony granted not pursuant to a divorce action), the objection being based, in part, upon the fact that the question had not been submitted to a jury. “It has also been recognized that even in cases where parties may be entitled *902 to a jury trial, they may impliedly waive it without expressly so doing.” (Cox v. Cox, 197 Ga, 260, 263.)
If I were to assume that the absence of a jury was indeed a defect and one of jurisdictional stature, I cannot further assume that that fact necessarily appears upon the face of the record. In that regard, I refer to Jones v. Smith (120 Ga. 642, supra) where the court commented rather clearly that an equivocal statement in the record will not suffice to impair the decree, a strong presumption favoring the existence of jurisdictional facts. In the case at bar, the record does not reveal that a jury trial was not had. What does appear on the face of the record is merely the consent to the waiver of trial by jury, and that the case was to be placed on the consent calendar.
The Georgia Statute of Limitations provides that: ‘ ‘ All proceedings of every kind in any court of this State to set aside judgments or decrees of the courts, shall be made within three years from the rendering of said judgments or decrees.” (Ga. Code, Ann., § 3-702.) Admittedly, the only factor which would prevent this section from precluding the defendant from contending that there was no Georgia domicile upon which the decree of divorce could have been based, is that Code sections 110-701 and 110-709 permitted a decree which was void for lack of jurisdiction to be attacked collaterally notwithstanding the Statute of Limitations. But, as has been seen, there is in Georgia law no indication of any kind that the absence of a jury would be considered a jurisdictional failing, or would otherwise cause the decree to be void. Therefore, even if it was error to try the case without a jury, since there is no showing that such mistake was a jurisdictional matter, the Statute of Limitations would be applicable to frustrate the defendant’s collateral attack. (See Girardey v. Bessman, 77 Ga. 483, 487.)
It is further urged by the defendant that section 30-101 requires that the judge may “ hear and determine all issues of law and fact in all petitions for divorce ”, “ [ujnlesS an issuable defense is filed, or a jury trial demanded in writing,” and that assuming that there was no such demand for a jury trial, there was here “ an issuable defense ”, and a jury verdict was required for the rendition of the decree. The record shows that the answer interposed by Moss, the plaintiff’s first husband, in the Georgia divorce proceeding consisted of denials of certain paragraphs of the plaintiff’s petition in that action with instructions in the power of attorney which Moss gave to the Georgia attorney who represented him that he was not to contest the divorce. I am of the opinion that this is not the type of “ issuable defense ” contemplated by the statute as to require *903 a jury trial. The term ‘1 issuable defense ’ as it is used in section 30-101, does not appear to have been defined by the Georgia courts, but it is worthy of note at this point that the cross action instituted by the defendant in response to the divorce suit in Dixon v. Dixon (204 Ga. 363, supra) would qualify as an “ issuable defense ” at least as well as the no-contest-general-denial of Moss in the divorce decree under attack in the case at bar.
In sum, I conclude that the defendant in the case at bar would not be permitted in the courts of Georgia to assail the divorce decree which his wife had obtained in that State against her former husband, and that, having failed to establish that the divorce State would permit the defendant to attack the decree, he cannot in this State expect a contrary ruling. Accordingly, there is no merit in the counterclaim for annulment, and it is dismissed.
I now proceed to a consideration of the plaintiff’s cause of action for a separation. In contrast to the defendant’s counterclaim, which presented primarily questions of law, the remaining issue — whether or not a separation decree should be awarded the plaintiff — involves largely a factual determination of highly disputed evidence. I shall therefore do no more than state my findings and conclusions.
The plaintiff is 39 years of age; the defendant 54. They were married to each other comparatively recently — on February 15, 1952. There is no issue of this marriage. When the first blush of married bliss was fading, the parties quarreled on a number of occasions, and the defendant engaged in a course of conduct in relation to the plaintiff intent on obtaining her consent to a divorce. He committed several physical assaults upon the plaintiff, the last of which (inflicted on January 8, 1957) caused the plaintiff physical injury. I find, too, that the defendant had deliberately afforded the plaintiff inadequate support. The result is that the plaintiff is entitled to a decree of separation in her favor.
On motion, the plaintiff was awarded temporary alimony at the weekly rate of $75. She now requests $175. The plaintiff’s present request is more than excessive. She has no children. She should endeavor to be gainfully employed. She is perhaps willing to enlist in the “ army of alimony drones ” (Doyle v. Doyle, 5 Misc 2d 4, 7) but her application in that regard should be and is rejected. Taking into account the relevant factors indicated in Phillips v. Phillips (1 A D 2d 393, per Boieix, J., for the court) I conclude that the plaintiff is entitled to receive $85 per week as alimony, which the defendant is directed to pay. *904 My learned colleague who fixed the alimony pendente lite also awarded the plaintiff “ a partial counsel fee ” of $500, “ the balance [to] be fixed by the trial justice as the facts developed at the trial will indicate.” I fix the balance of the fee in the sum of $1,000, plus the reasonable expenses to the plaintiff of the expert witness from Georgia.
The parties having duly waived formal findings of fact and conclusions of law, this opinion is my decision in conformity with the requirements of section 440 of the Civil Practice Act.
Settle judgment. The exhibits may be obtained by respective counsel from the clerk upon due receipt therefor.