MATTER OF F——

In VISA PETITION Proceedings

VP 3-I-126943

*Decided by Board January 29, 1959*

Nonquota status—Spouse of United States citizen—Divorce decree granted by State court not subject to collateral attack in visa petition proceedings.

(1) For the purposes of administering the immigration laws, a divorce decree granted by a State court will not be open to collateral attack on jurisdictional grounds to inquire into questions of residence and domicile, provided one of the parties to the divorce was actually present within the court's jurisdiction.
(2) Visa petition filed by United States citizen wife to confer nonquota status upon alien husband will be approved where the record shows that the beneficiary's divorce from his first wife in Italy was granted by a Florida court before whom the beneficiary was physically present and was followed by a ceremonial marriage in New York to his present spouse.

### BEFORE THE BOARD

**Discussion:** The case comes forward on appeal from the order of the District Director, New York District, dated August 11, 1958, denying the visa petition for the reason that petitioner's marriage to the beneficiary/husband is not legal on tthe ground that he did not have the necessary residence in the State of Florida before he obtained his divorce there; that consequently his prior marriage had not been legally terminated and the petitioner's present marriage to the beneficiary is invalid.

The petitioner's acquisition of United States citizenship through her father is conceded. She seeks nonquota status on behalf of the beneficiary whom she married at New York on January 25, 1958. This is the first marriage for the petitioner. The beneficiary was previously married on March 6, 1950, and as evidence of the termination of his prior marriage he submitted a final decree of divorce obtained in the Circuit Court of the Eleventh Judicial District in and for Dade County, Miami, Florida, on January 16, 1958. Examination of the divorce decree indicates that a decree *pro confesso* was entered against the defendant's wife and provided for the payment of $10 per month by the plaintiff-husband for the support of the minor child of the parties, the wife and child then residing in Italy.

A sworn statement was taken from the beneficiary, who is an applicant for preexamination, by a Service officer on May 26, 1958, and May 29, 1958. In the course of the first statement the beneficiary stated that he had lived in Miami Beach, Florida, continually from April 1957 to September 1957, returned to Miami after 15 days in New York, next returned to New York Christmas 1957, back to Miami about the fifteenth of January 1958 to obtain his divorce decree, thereafter returning to New York where he has since resided.

The beneficiary appeared voluntarily for a second statement to reveal that he had not disclosed the whole truth about his Florida residence. He stated that he first went to Florida in April 1957 and remained 4 days in order to sign some papers before a notary public; that he next went to Florida in June or July 1957, also for the purpose of signing papers before a notary public, and returned the same day; that he finally returned to Florida on January 15, 1958, and appeared in court and was granted a divorce the next day. He admitted that he had never actually resided in Florida but had always lived in New York. He did not recall being asked under oath whether he was a resident of Florida and claimed that he did not know the residential requirements for divorce in Florida but simply did what his lawyer told him to do; that the lawyer had told him that he could go back and forth 3 times and that it was the same as if he had resided there. He stated he had been advised by a friend to testify that he had resided in Florida and that he was scared when he appeared before an official of the law for a sworn statement on May 26, 1958. He further testified that he retained a New York lawyer to handle the divorce matter and that the latter referred him to the Florida attorney. He further explained that he and his wife did not actually consummate the marriage and live together until the religious ceremony in April 1958, and that they had lived together since that time. The beneficiary stated that his first wife was never in the United States but that she had been notified of the divorce action by letter.

In the instant case we have in evidence a marriage certificate showing that the parties married in accordance with all the prescribed formalities of law. In addition, there has been submitted a divorce decree of a State court purporting to dissolve the prior marriage of the beneficiary. There is of course the legal presumption which favors the validity of every ceremonial marriage which is one of the strongest presumptions known to the law and which ordinarily will yield only in the face of the most compelling proof.[1] In addition, the divorce decree in Florida was rendered by

---

[1] Schouler, *Marriage, Divorce, Separation and Domestic Relations* (6th ed.), vol. II, p. 1477; *Wigmore on Evidence* (3rd ed.), vol. IX, p. 370.

a legally constituted court. Not only the full faith and credit clause of the Federal Constitution, but familiar principles of law require the acceptance at face value of a judgment regularly granted by a competent court, unless a fatal defect is evident upon the judgment's face. However, the presumption of regularity and of jurisdiction may be overcome by extrinsic evidence or by the record itself.[2] That presumption may be overcome and is open to attack where the other spouse in the divorce proceeding had neither appeared nor been served with process in the State.[3] The burden of undermining the decree of a sister State is a heavy one and is not overcome by a record which contains merely a statement by the court below that the findings do not show that the defendant has appeared or been served with process in the divorce State, where the record does not contain the decree nor any stipulation concerning it.[4]

In the instant case the first wife of the beneficiary had neither appeared nor been served with process in the State. The Service representative has cited a number of Florida cases which indicate that the residence of a plaintiff in a divorce action in Florida may be attacked to show lack of jurisdiction and where jurisdiction is shown to be vulnerable, generally, under such circumstances, a collateral attack may be made on the decree of the court. Here, the beneficiary who was the plaintiff in the court action did make a personal appearance within the jurisdiction of the Florida court. The question we are confronted with is, whether, for immigration purposes, and under circumstances such as are present in this case, in the face of a divorce decree granted by a court of competent jurisdiction, followed by a ceremonial marriage which complies with the formalities of law, and evidence showing that the plaintiff in the court action was present within the jurisdiction of the court, we should inquire into the question of *bona fide* residence which purported to give the court jurisdiction.

This problem has previously been the subject of administrative scrutiny.[5] Questions involving the validity and recognition of divorces have concerned the courts for many years and unquestionably will continue to cause difficulty in the future; however, the Service can hardly undertake to become a disputant in the divorce arena since immigration officers are not equipped to adjudicate

[2] *Adam* v. *Saenger*, 303 U.S. 59 (1938)

[3] *Williams* v. *North Carolina*, 325 U.S. 226 (1945).

[4] *Cook* v. *Cook*, 342 U.S. 126 (1951).

[5] *Memorandum of the General Counsel*, Immigration and Naturalization Service, File 56013-B (7/2/47), approved by the Commissioner 7/8/47. The General Counsel's memorandum involved a Nevada divorce decree but the arguments would appear to apply with equal cogency to a Florida divorce decree.

troublesome legal questions of this character; and for the purpose of the immigration laws a divorce decree regularly granted by a court in the United States should be accepted at face value and should be deemed to have terminated the prior marriage for immigration purposes. There is no Federal policy which enjoins the nullification of State divorce decrees. On the other hand, a sound policy would require the avoidance, if possible, of a disruption of stable family relationships, and as a Federal administrative agency enforcing Federal statutes there is no justification in disregarding a divorce decree legally granted by a State court.

The assumption of authority to pass upon the validity of divorce decrees would place an excessive burden upon those charged with administration of the immigration laws. Exploration of the ramifications of divorce law in each case would inevitably lead into labyrinths of jurisdiction, domicile, residence and status with no satisfactory goal and an involvement in complexities utterly foreign to the responsibilities of administering the immigration laws. It would not appear to be sound administrative practice to expect immigration officers to pause in executing their own exacting duties in order to embark upon the collateral inquiry as to whether State divorce decrees were supported by proper jurisdiction and such an inquiry would impede the expeditious administration of the immigration laws. The wisest course would be to accept at face value the marital status regularized in conformity with the laws of the State. In conclusion, for the purpose of the immigration laws, the Service should regard as valid a divorce regularly granted by a State court and a subsequent remarriage formalized in conformity with the laws of that State or of any other State. In adopting this policy the requirements of the law would be adhered to, proper effect would be given to judgments and proceedings of a sovereign State, and reasonable safeguards would thereby be erected to protect a properly solemnized marital relationship. Finally, the adoption of such a policy would unquestionably facilitate the administration of the immigration laws.

These views received endorsement in *Matter of B——*, 3 I. & N. Dec. 227, where the residential requirements of jurisdiction of a Mexican divorce obtained by the petitioner were brought into question. It appeared that the petitioner had gone to Mexico for a few days, was granted a divorce, then returned to live in Florida and later remarried the beneficiary. In that case we disapproved as improper the view that immigration authorities must inquire into the validity of every divorce, whether obtained within the United States or elsewhere, and satisfy itself that the petitioner in a divorce action in every instance was domiciled within the jurisdiction of the court granting the decree before a subsequent marriage would be

recognized. We expressed the view that an administrative agency is going far beyond its legislative sphere when it attempts to inquire into the issue of whether the petitioner for a divorce was domiciled within the jurisdiction of the court granting the divorce and, therefore, whether the decree ought to be recognized. We set forth the principle that inquiry into the jurisdiction of a court should stop when it is ascertained that a party to the proceeding was actually within the court's jurisdiction.

In *Matter of B——*, 5 I. & N. Dec. 659, we recognized as valid a marriage in California subsequent to a Mexican divorce obtained by a wife, the wife having made a trip to Mexico to secure the divorce and the defendant-husband having given his written consent to the divorce and having been represented by counsel in the divorce proceedings, applying the principle that the validity of a marriage is governed by the law of the place of celebration.[6] Of course, this type of case differs from the pure Mexican "mail-order" divorce decree where neither party was ever physically present within the jurisdiction of the court or within the jurisdiction of the state. However, if recognition under rules of comity is granted to a Mexican divorce decree in which one of the parties was physically present within the jurisdiction, it would follow that recognition under the full faith and credit clause of the Constitution would present a stronger argument for recognition of a divorce decree granted by a sister State in which one of the parties was actually present within the court's jurisdiction. Under such circumstances, it having been established that one of the parties was physically present within the court's jurisdiction, for immigration purposes the inquiry as to jurisdiction should end.

In the present case it appears that the beneficiary was actually present within the jurisdiction of the Florida court and appeared in court when he obtained the divorce decree terminating his first marriage. He has presented evidence of a subsequent ceremonial civil marriage, as well as a religious marriage with the petitioner in the State of New York. There is no indication of any attempt by the first wife to contest the Florida divorce decree. Under these circumstances, the visa petition will be approved.

**Order:** It is ordered that the visa petition be and the same is hereby approved for nonquota status on behalf of the beneficiary.

---

[6] *Matter of P——*, 4 I. & N. Dec. 610.