Samuel C. Coleman, J.
Plaintiff, wife, suing for a decree of separation, faces a counterclaim for annulment, or a separation, if annulment fails. There is also a counterclaim based on property rights which I shall discuss later.
As the plaintiff’s right to a separation rests upon a valid marriage (Fischer v. Fischer, 254 N. Y. 463), I turn to the cause of action for annulment. The parties were married in Prance in 1959 and again in New York, in 1960. But says the husband, neither marriage is valid because a divorce which the wife had obtained from her former husband in Chihuahua, Mexico, in 1955 was void and because the two marriages to him occurred during the lifetime of that husband. The divorce, he argues, though not a “ mail-order ” divorce strictly (Caldwell v. Caldwell, 298 N. Y. 146), shares all the vice of such a divorce. The divorce was obtained in this manner:
The plaintiff, after entering into a separation agreement with her then husband, both domiciled in and residents of New York *96 (an agreement which by its terms conld be incorporated by reference in a divorce decree) travelled by plane from New York to Juarez, in Chihuahua. The same day or the next, she appeared in court, with an attorney, and lodged a complaint against her husband asking for a divorce on the ground of incompatibility of temperament — a recognized ground in Chihuahua. The defendant, husband, appeared by a Mexican attorney, authorized to appear by virtue of a power of attorney mailed to that attorney from New York. The husband did not go to Chihuahua. His answer admitted the allegation of incompatibility and without further proof — the admission being adequate under Chihuahua law, a decree was entered. The plaintiff returned immediately to New York.
But on these facts, the plaintiff says — having in mind the presumed validity of the French and New York marriage ceremonies, that the defendant cannot argue that the Chihuahua divorce is void. The pattern of personal appearance of the wife and appearance by the husband by attorney, establishes the ‘ ‘ jurisdiction ’ ’ of the Chihuahua court and precludes any further inquiry. To which the husband replies that the manner of “ acquiring jurisdiction ” in Chihuahua and the nature of that “ jurisdiction” must be looked into to determine the validity of the divorce; that ‘ ‘ jurisdiction ’ ’ means not the formal satisfaction of requirements of the foreign country but jurisdiction “as we understand those terms” (Caldwell v. Caldwell, 298 N. Y., 146, 150, supra); that there was no jurisdiction “as we understand those terms ” and that the Mexican court therefore was powerless to proceed.
Upon these facts we start with certain premises. If neither party had actually gone to Chihuahua and the divorce had been obtained by mailing papers to attorneys in Chihuahua to enter appearances the divorce would have been void. (Caldwell v. Caldwell, 298 N. Y. 146, supra). If the. wife had gone to Chihuahua and had obtained a divorce by service on her husband in New York, but without his appearance, that divorce would have been void (Alfaro v. Alfaro, 5 A D 2d 770, affd. 7 N Y 2d 949). The record on appeal in the Alfaro case discloses that the husband had gone to Mexico for the single purpose of obtaining a divorce, never intending to give up his New York residence, the wife was served by mail in New York, but did not appear (cf. Marum v. Marum, 8 A D 2d 975). Does the fact that the husband here appeared by mail and in effect invited a decree against him, improve the wife’s position when she went to Mexico solely to obtain a divorce f In the circumstances to be shown — the nature of the proceedings in Chihuahua, the divorce *97 laws of that State and its basis for “ assuming” jurisdiction; and above all by reference to our power over the marital status of spouses domiciled in and residents of New York — I do not think it does. The principle of the Caldwell case with its emphasis upon the extent of our power over that status is controlling.
It may be the assumption that a divorce obtained in the circumstances here is valid and some cases are frequently cited in support of that assumption. But, I believe the conclusions have been reached either by assimilating decrees of divorce in foreign countries with decrees of sister States or by overlooking the precise grounds of “ jurisdiction ” upon which the foreign country presumed to act; or by attributing to “ appearance by attorney” in a divorce action the significance it may have in other actions; or on grounds of estoppel. The cases either preceded the Caldwell case, or they were decided, I think, without reference to the principle of that case.
In dealing with a decree of a foreign country, of course, the “full faith and credit” clause of the Constitution does not apply; and it adds nothing to say that we recognize such a decree under the principles of “comity”. We recognize foreign decrees when we do, within that principle, if after an examination of the decree — particularly in matters involving the marital status of New Yorkers, we at least accept the basis of jurisdiction upon which the foreign court acted as a proper basis, as “we understand ” jurisdiction, if not the grounds of divorce and the manner of proof; and if on grounds of policy we think we should recognize them. Cases then that equate “ full faith and credit ” with “ comity” are beside the point, as are cases which rely upon United States Supreme Court decisions inhibiting inquiry into the jurisdictional basis of a sister State which granted the decree. No question of estoppel is involved; the wife who procured the decree is not questioning it and the defendant was in no way concerned in procuring it. And this assumes that the doctrine of estoppel has validity today in a case of this kind. (Cf. Alfaro v. Alfaro, 5 A D 2d 770, affd. 7 N Y 2d 949; Marum v. Marum, 8 A D 2d 975, supra.)
We are then left with the question of jurisdiction upon which the foreign court presumed to act and our views of that question. And for that we turn to the Chihuahua “ judgment-roll ” and the provisions of Chihuahua law upon which it was based. I have been aided in this by Mr. Vargas of the Mexican Bar, who testified for the plaintiff and by Prof, de Vries who testified for the defendant. My task was made easier by the almost complete agreement between the two in essential matters.
*98 I understand this to be the position in Chihuahua: A divorce may be obtained by mutual consent. This was not such a divorce; it was a ‘ ‘ contested ’ ’ divorce. The jurisdictional basis — ‘1 competence ’ ’, the power to hear and determine a case of divorce is found in articles 22 and 23 of the Divorce Law. They are as follows:
Article 22. The judge competent to take cognizance of a contested divorce is the one of the place of residence of the plaintiff; and to take cognizance of the one by mutual consent, the one of the residence of either of the .spouses.
Article 23. Competence may also be fixed by express or tacit submission. Express submission exists when the parties concerned renounce clearly and conclusively that forum which the law accords to them, and designate with all precision the Judge to whom they submit. Tacit .submission exists by the fact that the plaintiff files his complaint, or by the fact that the defendant, after having been summoned in proper form, does not timely raise the lack of competence, or, after having raised it, desists therefrom.
I add article 24. “ Residence for purposes of article 22 of the present law shall be proved by the respective certificates of the Municipal Register of the place.”
The plaintiff here appeared in Juarez and in court on January 6, 1955, with her attorney. She alleged incompatibility of temperament and asked for a divorce. She had no certificate of residence (art. 24); she was not eligible to obtain one as she was not a resident; she was no more than a transient. She did not allege she was domiciled in or a resident of Chihuahua. On the contrary, she merely supplied an ‘ ‘ address to receive notifications in this city ’ ’ and she added ‘11 submit myself expressly to the jurisdiction of this court with respect to everything relating to this action and renounce all other law that may be applicable in this case for any reason.” The same day “ she ratifies her complaint in all its parts, particularly those by which she expressly submits herself to this jurisdiction ’ ’. She alleged that her husband was domiciled in New York. And on the same day her then husband appeared by an attorney (the Mr. Vargas who testified for the plaintiff here), acting pursuant to a power of attorney from the husband, dated January 3, 1955. The attorney stated that “ my principal is informed and considers himself as notified of all that has taken place in this matter and considers himself party in such action, since he expressly submits himself to this jurisdiction. That my principal, through me, answers the complaint, brought against him, stating that the facts alleged in the same are true; that he has po objections *99 to make, and moreover prays that judgment be rendered, granting the divorce requested ’ \ The attorney added that his client ratified the separation agreement and asked to have it incorporated, by reference, in the judgment. The husband did not deny the allegation of his domicile in New York. Neither did he allege that he was a resident anywhere else.
I interpolate here that the statements of the attorney went beyond the terms of the instrument under which he presumed to act. The attorney was not specifically authorized to admit the validity of the alleged grounds of divorce, nor to join in the petition of divorce. The husband did ‘ ‘ manifest to the Court my express recognition and acceptance of its jurisdiction to hear and try said .suit for divorce and in which I am a party ”. He did “ authorize my Attorney to state to the Court my acceptance of the address for receiving notices established by the plaintiff in the State of Chihuahua * * * as well as the validity and regularity of the proceedings in said action for divorce, in which I am expressly putting in my personal appearance through my duly constituted attorney, and that I shall hold as forever valid any decree that is handed down therein.” He also granted to the attorney “ all powers as may be necessary in the divorce proceedings * * * in order that the same may be effective and legal in Mexico and all other jurisdictions, including the United States of America ”. The language is periphrastic, but its meaning is transparent. The husband was consenting to the divorce and authorizing his attorney to say so, before the wife left for Chihuahua.
A decree of divorce was entered the following day, January 7. No testimony was taken. On the complaint, the admissions in the answer, the personal appearance of the plaintiff, “ expressly submitting herself to this jurisdiction ”, the appearance by the defendant by attorney, ‘ ‘ by which he expressly submits himself to this jurisdiction, accepting as true the facts set forth in the same ”, the court found that it had jurisdiction over the parties and over the subject matter. It did so by reference to articles 22 and 23. Although the court bracketed the two articles, its reference to article 22 was for the purpose of establishing that it was a court of general jurisdiction, competent to hear cases of divorce. — jurisdiction of the subject matter. The reference to article 23 was to establish its jurisdiction over the parties. “ [T]he plaintiff entered a personal appearance before this Court and the defendant did so by means of his duly appointed Attorney and both expressly submitted to this jurisdiction.” There was no finding of residence or domicile of either party; no reference to it; there was no requirement in the law either as *100 to domicile or residence. There was no mention of a certificate of residence under article 24; neither domicile nor residence was an issue. The decree specifically was on the basis of two people neither one of whom had any ties in the territory of the court’s jurisdiction, agreeing to let the court hear their case. So long as the plaintiff ‘ ‘ submits ’ ’, it is of no concern to the Chihuahua court where the parties live, how long they have lived there, where they are domiciled, whether one side or the other appears in person or by attorney or “ by mail ”. The personal appearance of the plaintiff in court was “ surplusage ”. The court proceeded to act because the parties “acquiesced” in the jurisdiction, or “ submitted” to it and “renounced all other law ”.
Such a divorce is valid in Chihuahua and throughout Mexico. It would be valid even if the husband had defaulted. Is it valid here? Should we recognize it? We are not required to do so. (Cf. Rosenbaum v. Rosenbaum, 309 N. Y. 371.) But the question is not whether the Chihuahua court had jurisdiction to proceed under its own laws. It did have jurisdiction. So did the Mexican court in the divorce proceedings involved in Caldwell v. Caldwell (298 N. Y. 146, supra) and in other cases in our courts where Mexican “ mail order ” divorces were refused recognition. And also in cases where there was no appearance by the defendant, summoned to appear by mail, and where the plaintiff had not established a “ domicile ” (cf. Alfaro v. Alfaro, 5 A D 2d 770, affd. 7 N Y 2d 949, supra); and it had jurisdiction in the Heine (10 A D 2d 864) case, to be considered later. The question is whether it had jurisdiction, not necessarily by reference to our statutes, conferring jurisdiction upon this court in matrimonial matters, but by reference to our commonly understood definition of that term in matrimonial matters. We may talk of domicile, of “ residence ” as its equivalent, of extended periods of residence in a foreign land (cf. Gould v. Gould, 235 N. Y. 14), of marital res; but whatever concept we have in mind, whatever language we use we insist upon a link of some length and of some degree of permanence actual or prospective, between the spouses and the sovereignty which assumes to exercise power over them in relation to the marital status. Unless there is that link, the sovereignty has no power to act.
This is so as to divorces obtained in sister States (Williams v. North Carolina, 317 U. S. 287; Williams v. North Carolina, 325 U. S. 226; Sherrer v. Sherrer, 334 U. S. 343; Coe v. Coe, 334 U. S. 378; Rice v. Rice, 336 U. S. 674; Klarish v. Klarish, 19 A D 2d 618), as well as to divorces obtained in foreign countries (Caldwell v. Caldwell, 298 N. Y. 146, supra; Rosenbaum v. Rosenbaum, *101 309 N. Y. 371, supra; Alfaro v. Alfaro, 5 A D 2d 770, affd. 7 N Y 2d 949; Senor v. Senor, 272 App. Div. 306, affd. 297 N. Y. 800).
The Constitution requires us to give “ full faith and credit ” to divorces obtained in other States; yet it does permit an inquiry in certain eases, into the question of “ domicile ” (or its equivalent — “ residence ” as that term is frequently used). “ Domicile ” there must be — either by a finding of the court granting the divorce, or by the court of another State in which the question arises, in the classes of cases, limited in number where it is permitted; even in some instances where there has been an “ appearance by the defendant ’ \ “ Domicile is the controlling factor ” (Caldwell v. Caldwell, supra, p. 149). There are no such limitations when dealing with a divorce of a foreign country. Questions of jurisdiction of the foreign country, of domicile, residence of the parties according to our notions, are always open to examination, and we must find that there was a link (Rosenbaum v. Rosenbaum, 309 N. Y. 371, supra).
There was no such link here. The spouses “ submitted ” in the Chihuahua sense, but “ [t]he spouses here never submitted themselves to nor invoked the jurisdiction of a court of the foreign nation as we understand those terms ” (Caldwell v. Caldwell, 298 N. Y. 146, 150). They simply said we are here — in person or through attorney — and “ let us have a divorce.” In theory, to be sure, the former husband could have appeared and denied jurisdiction, could have declined to “ manifest to the Court my express recognition and acceptance of its jurisdiction to hear and try said suit for divorce and in which I am a party ”. But by this language in the power of attorney he had agreed to acquiesce in “conferring” jurisdiction upon a court, which proceeds to act merely on the say-so of the parties; and he knew it would act on that basis alone. He was not called upon to admit or to deny an allegation of residence, so he would not be in the position of a defendant appearing in a divorce action where domicile or residence was required and was alleged but was admitted or not denied. But we do not permit him to “submit” or to “confer”, irrespective of the manner of “ submitting ” or “ conferring ”.
We accept — we are required to accept — short periods of residence, findings of fact as to domicile or residencé of sister States. Would we be required to accept as valid a divorce obtained in a sister State pursuant to its laws where the plaintiff appears in person, that is, is physically present in court, and the defendant appears through attorney where there is no residence requirement or domicile requirement, no finding as to either, and jurisdiction is assumed because the parties “confer” *102 jurisdiction, that is, give jurisdiction? I think not. “ Jurisdiction of a court to entertain a divorce action and render a binding decree therein must rest on a broader base than jurisdiction over the person of the parties. A requisite is jurisdiction over the marital res in which the State as well as the parties has an interest. The authority of a court to dissolve the marriage band, therefore, must rest upon the authority of the State over the marriage, requiring that at least one of the parties be a domiciliary of that State ”, the Appellate Division in this Department said in dealing with a Nevada divorce (Senor v. Senor, 272 App. Div. 306, 310-311, affd. 297 N. Y. 800, supra). If we are required to accept such a divorce, it will be only because the Constitution requires it. For acceptance of such a divorce could come only by abandonment of all our basic concepts of control over the marital status of New Yorkers, a control which arises because of a tie of some permanence between the spouses and the State. The State must have “jurisdiction” before it can act; it cannot be “given jurisdiction ”; and domiciliarles of our State cannot “ renounce ” our laws and our control over them. To permit them to do so “would be contrary to our public policy in the protection of marriage and morality” of citizens of our State (cf. May v. May, 251 App. Div. 63, 64). One relying upon such a divorce would need not only the full faith and credit clause in support; he would have to overcome an attack upon it based upon the due process clause of the Fourteenth Amendment.
■Should we recognize .such a divorce when obtained across the border, whether that border is the Rio Grande or the St. Lawrence River? Juarez is across the river from El Paso, Texas; a bridge connects the two cities. The defendant questions whether the plaintiff was in fact in the court in Juarez. I think she was. Suppose she stayed overnight in El Paso and appeared in court only to present her complaint. Would the fact that she left New York for one day be sufficient, even if she did not leave the country? And would one day, or overnight, in Juarez change the situation? The divorce was by mail so far as the husband was concerned; his papers arrived in Mexico by mail. Is there anything added by the fact that the wife was her own carrier — carrying herself and her prearrangements made in New York with her to Mexico and signing papers there instead of sending them by mail? The question is not answered by a change of locale, but suppose Quebec proceeded as Chihuahua does. Would we recognize a decree obtained in similar fashion whether the plaintiff stayed overnight at Rouses Point and appeared in court in the Province of Quebec *103 the following day, or spent the night in Quebec? The principle of the Caldwell case is broad enough to cover this case. “ I can see no distinction between this case and Querze v. Querze, 290 N. Y. 13 [and Caldwell v. Caldwell, 298 N. Y. 146] which refused to recognize a Mexican ‘ mail-order ’ divorce. Neither of these parties ever had even a colorable residence in Mexico and the divorce decree is patently invalid. If we were to permit a divorce decree such as this to stand, we might just as well permit dissolution of marriage by agreement of the parties.” (Molnar v. Molnar, 131 N. Y. S. 2d 120, 121-122.)
I have expanded my views and presented details, particularly of the proceedings in Chihuahua, because of the assumption that the pattern followed here is beyond question. But the Appellate Division in the Second Department did not think so (Heine v. Heine, 10 A D 2d 864) and the references to that decision by the Appellate Division, First Department, indicate that the question is not foreclosed in this Department.
The Heine case was a suit by a wife for a declaratory judgment that the divorce which she had obtained, as plaintiff, from her husband in Mexico was invalid and that .she was still married to him, the defendant. She was in Mexico on a “ one hour ” appearance. Her husband appeared by attorney. The record on appeal contains the decree (State of Chihuahua) which was annexed to the wife’s complaint. It recites that the plaintiff appeared personally, ratified her petition, including “ her express submission to the jurisdiction of this court”; that she presented a residence certificate issued to her * * * with which she proved to be legally registered in the Official Book of residents of this City [Juarez]; and that the husband appeared by attorney. The Judge at Special Term granted the husband’s motion to dismiss the complaint. Personal appearance by the wife and appearance by the husband through attorney, he thought, sufficed to validate the divorce. In the Appellate Division, the wife evaded the fact of her husband’s appearance and the husband emphasized it. The Appellate Division reversed.
‘1 Under the allegations of the complaint, which we must assume are true, the Mexican divorce here involved is a nullity, and of no more validity than a so-called mail-order divorce (Rosenbaum v. Rosenbaum, 309 N. Y. 371, 376; cf. Caldwell v. Caldwell, 298 N. Y. 146; Alfaro v. Alfaro, 5 A D 2d 770, affd. 7 N Y 2d 949) ”. It regarded its decision in Laff v. Laff (5 Misc 2d 554, affd. 4 A D 2d 874) as “ no longer controlling ”. In the Laff case the usual pattern of personal appearance and appearance by attorney had been followed and the court held *104 the divorce valid. A month after the Seine decision the court reconsidered its reference to the Laff case and stated that the decision was not controlling “ since the power of attorney authorizing a Mexican lawyer to appear for the defendant in that action was before the court and the court found it valid ” (10 A D 2d 967). The Mexican decree in the Laff case was not printed in the record on appeal (it was handed up on argument) so we are unable to say what the allegations of residence or domicile were — what the basis for taking jurisdiction was.
The reference in the Seine decision to the Galdioell case equates the Seine case with that case; that is, the wife’s appearing in court with her papers had no more significance than her mailing them, from New York or from any other place; and the reference to the Alfaro case indicates that appearance by a defendant is of no significance where the plaintiff in the Mexican proceedings has no domicile in Mexico. We must first find that the Mexican court had jurisdiction to begin with, that it had power — control — over the plaintiff and her status to enable it to proceed.
I refer to several recent decisions of the Appellate Division in this Department.
In Percy v. Percy (12 A D 2d 466) speaking of a Mexican divorce where the husband was alleged to have appeared, the court said: “It is questionable whether the decree of divorce obtained in Mexico is valid ”, citing the Seine and the Alfaro cases. The Judge below had held the divorce good. There was a reversal on the ground that there were questions of fact with respect to the divorce and also whether the case was a proper one for declaratory judgment. But the reference to the Seine and the Alfaro decisions is significant.
In Fishberg v. Fishberg (16 A D 2d 629) no printed record was filed and the case was decided upon original papers. We cannot say how the Mexican divorce was obtained. My reading of the papers leads me to believe it was ex parte. The court held it void and permitted the defendant before it, who had procured the divorce to set up its invalidity. It cited the Alfaro ease and the Marum case (8 A D 2d 975, supra) (where there had been no appearance by the defendant). It also cited the Seine case.
And in Beneduce v. Beneduce (18 A D 2d 1) the question was whether the validity of a separation agreement incorporated in a Mexican decree of divorce was res judicata. The court held that it was. But, “ [s]ince the plaintiff [husband in the Mexican court] attacks the separation agreement, and not the *105 divorce decree, it is unnecessary to pass upon the question as to whether he is estopped from attacking such decree because of his appearance therein, or whether comity requires its recognition.” (However, see cases cited and it refers to the Rosenbaum, Alfaro, Heine and Laff decisions.)
The record on appeal in the Beneduce case recites the personal appearance of the plaintiff before the Mexican court, the appearance of the defendant by attorney. There was “ submission ” to the jurisdiction by both sides and in addition the wife submitted a certificate of registration. The Mexican court said it had jurisdiction under articles 22 and 24 because of the “ registration certificate ” and under article 23, “ as both parties expressly submitted to the jurisdiction of this court”. In those circumstances the reference to certain decisions by the Appellate Division can hardly be regarded as anything but a caveat of the invalidity of the divorce.
I take up the references to a certificate of registration of residence under article 24 of the Chihuahua Law. (There are similar provisions in the laws of other States of Mexico.) They had been obtained by some plaintiffs in cases which upheld a Mexican divorce and that fact has been thought to add strength to the divorce. For despite the ease with which the certificates seem to have been obtained, obtaining one was not a perfunctory matter. This was made plain by the Mexican attorney who testified for the plaintiff. One’s plans, intentions, residence, occupation were required; and obviously the application for the certificate and its issuance were based on a prospective tie of some permanence. As Mr. Vargas said, the plaintiff could in no circumstances obtain such a certificate. She was in Juarez— for a day or overnight — not intending to reside there — but to transact her matrimonial business and to leave immediately. The plaintiff in the Heme case had such a certificate but it did not avail her.
I have referred to the assumption that a divorce of the kind obtained here was valid and I think I should speak of a few cases which are commonly cited in support of that assumption.
Leviton v. Leviton (6 N. Y. S. 2d 535 [1938], mod. 254 App. Div. 670), is the first in time. The wife was plaintiff in Chihuahua. Both husband and wife were in Juarez and the husband was served in Juarez; each appeared before the court and each had a certificate of residence. The decree recited that each side submitted to the jurisdiction of the court; ‘ ‘ that the domicile of the plaintiff and the defendant were duly proven in accordance with the law; and that both parties having expressly submitted themselves to the jurisdiction of this court ’ ’ the court had *106 jurisdiction to act, citing articles 22, 23 and 24; and it decreed a divorce.
The husband later remarried and the wife sued for a divorce on the grounds of adultery, taking the position that the Mexican divorce proceedings which she had instituted were void. Judge McCook thought the Mexican divorce valid. “ The Mexican law respecting residence has been followed. The establishment of a domicile or residence in the strict sense is a question both of intent and act. The parties acted; we must accept the Mexican court’s conclusion upon their intent” (p. 537). He thereupon denied the plaintiff’s motion to strike out the defense of the validity of the divorce and struck out the other defenses which related in effect to the question of estoppel against the first wife. The Appellate Division let the first defense stand and reinstated the others. The decision preceded the Caldwell and the Rosenbaum cases (1948 and 1955) with their discussions of the effect of foreign decrees, the basis upon which they were obtained and the inconclusiveness of the recitals in the decrees. We are not required to “ accept the Mexican court’s conclusion upon their [the parties] intent” as to residence or domicile. In any case, both parties were physically present within the jurisdiction, the defendant was served in the jurisdiction, and the parties had taken steps which satisfied the Mexican court that they were “ domiciled ’ ’ there.
Caswell v. Caswell (111 N. Y. S. 2d 875 [1952]) is almost invariably cited. There a husband sued for annulment on the ground that a divorce obtained by his wife in Mexico from a former husband was invalid. The wife had appeared personally in Mexico, the husband by attorney. The Judge, after trial, dismissed the complaint. He thought that because the husband had appeared in the divorce action the decree was not open to attack. ‘ ‘ Plaintiff would have this court examine into the propriety of the holding, express or distinct, in the foreign decree, of domicile or residence of the plaintiff in the action in Mexico; into the bona fides of such residence and into the jurisdiction of the Mexican court over the marital res ’ ’ (p. 876). “ [T]he question of residence going essentially as it must to a consideration of jurisdiction in the divorcing forum is not open to judicial question under the facts in this case ” (p. 877). The Judge thought he was precluded from going into these questions by the decision in Cook v. Cook (342 U. S. 126). But as the Cook case involved a decree of a sister State and the effect to be given it under the full faith and credit clause, it did not, I say with deference, call for the court’s conclusion. *107 The question of “residence” or “domicile” was open to question.
The Caswell case is just as invariably cited in decisions, texts and citators as having been affirmed by the Appellate Division, First Department, in 280 App. Div. 969. This is unfortunate; there was no appeal from the trial court’s ruling. The Caswell case was decided March 26, 1952. After the husband’s case had been dismissed, the wife sued for a separation on the grounds of cruel and inhuman treatment and of abandonment. The husband moved to dismiss on the ground that the complaint did not state a cause of action; the motion was denied (July, 1952) and it was from that order that an appeal was taken which is reported in 280 App. Div. 869, affirming the court below, without opinion (record on appeal). The validity of the Mexican divorce was in no way involved and the decision in 111 N. Y. S. 2d 875 was in no way considered.
Matter of Fleischer (192 Misc. 777 [1948]) preceded the Caldwell and the Rosenbaum cases. The husband appeared in person, obtained a certificate of registration; the wife appeared by attorney. The Surrogate thought, referring to Williams v. North Carolina (325 U. S. 226) that the “ jurisdictional fact of domicile * * * is not open to attack unless the public policy of our State intervenes to deny recognition to the decree of a foreign country which followed upon the submission of both parties to that jurisdiction ” (p. 781).
Again the reference to the Williams case is inapposite. The “jurisdictional fact of domicile” is open to attack; and considerations of “public policy” are relevant (cf. Rosenbaum v. Rosenbaum, 309 N. Y. 371, supra; Glaser v. Glaser, 276 N. Y. 296, often relied upon in the matter of public policy would today be decided solely by reference to the full faith and credit clause, although the finding that there was a domicile in fact in Nevada put an end to the litigation “ in fact ”). And equitable considerations may have weighed with the Surrogate.
Mountain v. Mountain (109 N. Y. S. 2d 828 [1951]) is frequently relied on; it preceded the Rosenbaum case. The wife, plaintiff in the Mexico court, appeared by an attorney; she was not in that country. The husband, defendant, went to Mexico, was served there, appeared and filed an answer. “ His presence and his domicile within the jurisdiction of the [Mexican] court were expressly noted in the judgment” (p. 829). The Judge referred to the fact that the husband, who could have questioned the court’s jurisdiction over him swore that he was living in Mexico. Citing the Leviton and Fleischer decisions, the Judge *108 concluded that neither of the parties could question the validity of the Mexican divorce, and citing Johnson v. Muelberger (340 U. S. 581) (a Florida divorce) he concluded that the second husband, whom the wife married after the divorce, was powerless to question it. But, as we have seen, all questions of jurisdiction — domicile, residence, are open to re-examination.
I have already referred to the Laff (5 Misc 2d 554, affd. 4 A D 2d 874, supra) case. There are others where the assumption is made. But, I repeat, except for the Laff case, the foreign divorce was held free from attack either because of estoppel— bad faith or fraud — or because the jurisdiction of the foreign country was based on allegations of residence or domicile, or because an appearance “conferred” jurisdiction; or because of the findings of the foreign court as to residence or domicile in the foreign jurisdiction, or because foreign decrees of divorce were believed to be entitled to “full faith and credit”; or because of a combination of these considerations. In the Laff case, we cannot say what factors prevailed, as we do not have the Mexican decree before us; the immediate remarriage in the Mexican jurisdiction, where it was, of course, valid, may have been a factor, and the Judge cited the Caswell case as having been affirmed.
But whatever the grounds for decision in those cases, I think they are invalidated by the Caldwell, Rosenbaum, Alfaro and Marum decisions. The State of Chihuahua had not the slightest measure of judicial power over either litigant; neither one could “ renounce ” the laws of New York and “ confer ” jurisdiction or power over their status upon Chihuahua by a fleeting call upon its courts and a mailing of a paper to someone to present to the court. “ There is not even the slightest semblance or color of jurisdiction justifying action by a court ” (Caldwell v. Caldwell, 298 N. Y. 146, 150, supra). The statement in the Caldiuell case that neither side ever “ visit[ed] ” Mexico, does not mean that such a “ visit ” would suffice. “ Domicile is the controlling factor ” and domicile could not be acquired in the absence of a start with a “visit”, that is, physical appearance. But “ visit ” or “no visit ” there was no domicile here.
Comity does not call upon us to recognize the decree — as we might feel called upon to do in the case of a judgment on a commercial transaction transitory in nature where for one reason or another, an action is brought in a foreign country unrelated to the parties or the transaction and a defendant chooses to appear. No doubt Chihuahua would recognize a *109 decree of divorce granted by our courts; but we do not recognize its power to decide for us the marital status of our domiciliarles, its power to grant the divorce in question. There is no magic in the formula “ personal appearance of plaintiff followed by appearance of the defendant by attorney ” in a case of this kind. And we should not recognize the decree. Such a decree was not recognized in the Calchvell case; nor in the Heine case; nor in the Molnar case from which I have quoted (the Molnar case was affirmed without opinion by the Appellate Division, First Department, 284 App. Div. 948, but the court’s decision below was on alternative grounds — the divorce was no different from a “ mail order ” divorce; and the power of attorney to the defendant’s Mexican attorney was invalid). There was just as much collusion here as in the Caldwell and Heine cases; just as much evasion of our laws and jurisdiction. The evasion is not made any the less transparent by the device of one side presenting papers instead of mailing them. There was agreement to dissolve the marriage by the signing and presentation of papers to a court lacking jurisdiction. The vice in the Caldwell case was not in the mailing, but in what was attempted by the mailing. That vice is not cured by what was done here; and the attempt was the same. “ [T]he Mexican divorce here involved is a nullity, and of no more validity than a so-called mail-order divorce ” (Heine v. Heine, 10 A D 2d 864).
This conclusion also calls for a declaration that the French marriage is of no effect. There was testimony for the defendant that if the validity of the Mexican divorce and the validity of the French marriage were before the French courts in proceedings between the plaintiff and the defendant here the courts would annul the marriage; and this by reference to their conflicts of laws rule. By that rule, it was said — the divorce and the marriage involving in each instance New York “ nationals,” domiciled in New York — the internal New York law would be taken as the basis of decision, and the divorce being void under New York law, it would be void in France. The decisions called to my attention, and my own reading lead me to believe that this statement is probably a correct forecasting of what the courts in France “ are likely to do in fact ”.
But it is unnecessary to go into the question. On the trial and thereafter in memoranda and in oral argument the plaintiff declined to enter into the question of the validity of the French marriage except on the basis that the formal requirements of French law had been met. Her attorney’s position was that no question of the right to annulment under that law could arise *110 until I should he satisfied by proof “that the French courts would take jurisdiction of the matter I do not understand the argument but in a later memorandum the plaintiff’s attorney restated his views as to French law “ in a summary restatement of our position, which I * * * believe is sound and dispositive of the problem ’ ’.
“ 1. Provided jurisdictional requirements are met, the Courts of New York have the power to declare a marriage invalid regardless of where that marriage takes place.
“5. In passing on the validity of the marriage the Court does not, should not, and cannot came to grips with the question of whether or not Mr. Wood would be entitled to an annulment in France, because the marital res is in New York and the French Court does not have jurisdiction over the parties.
“ As previously urged by the plaintiff, the question as to what the French Court would decide on proceeding to annul the French marriage is not an issue before this Court for the reasons already stated. The appropriate question is whether these New York residents, now before this Court, were eligible to marry in New York or any other jurisdiction, including France, under the New York law.” And referring to one of the decisions of a French court, upon which the defendant relied, he added — “ If the quoted language is a correct statement of the conflict of laws principle which the French Court would adopt, then, assuming that the parties did submit their annulment question to the French Court, the French Court would apply the law of the State of New York in any event.”
These postulates of the plaintiff do no more than state the accepted New York rules. The plaintiff relies basically upon the validity of the Mexican divorce and the validity of the New York marriage. There is no need to consider the French marriage. If it is to be considered, the only question to be determined is whether it satisfied the formal requirements of French law. I believe those requirements were satisfied. Not only does the marriage carry its presumption of regularity — that is, as to formal requirements — but the defendant’s brief recognizes the probability that a gap of a few days in the 30-day residence period required for the issuance of a license (the few days being spent outside France) would not invalidate the marriage. But that is not enough. “ The appropriate question [since we are dealing with the marital status of two New Yorkers], is whether [they] were eligible to marry in New York or any other jurisdiction, including France, under the New York law.”
*111 Under the ££ New York law ” the Mexican divorce is void, and consequently neither the French marriage nor the New York marriage is valid.
The plaintiff’s action for separation then is dismissed. The second cause of action, based on failure to support, is dismissed. The plaintiff has been occupying the apartment which the parties own, and the defendant, without order of the court, has been paying maintenance charges on the apartment, and has been paying the plaintiff’s living expenses, in substantial amounts. The defendant’s counterclaim for annulment of his two marriages to the plaintiff is granted; his cause of action for separation is dismissed without prejudice.
Two other aspects of the case remain. Under section 1140-a of the Civil Practice Act, I “ may give such direction for support of the wife by the husband as justice requires” (Johnson v. Johnson, 295 N. Y. 477; cf. Gaines v. Jacobsen, 308 N. Y. 218). Neither side referred to this provision and I shall take briefs from each side on whether, on the facts of this case and on the assumed state of the law I should make such a direction and also on the factors to be considered in arriving at the amount of an award. There are no children of the marriage.
This question is related to the remaining two causes of action in which the husband seeks to undo the effects of several instruments he made a few months before this action was brought, by which he transferred to the plaintiff and to himself as joint tenants, his interest in the apartment he alone had owned. An annulment, he says, destroys the effect of the instruments and in any event, they were conditioned upon a promise by the plaintiff which failed. The cases cited by the defendant deal mainly with prenuptial agreements; and the plaintiff £ £ will not set forth any argument on this point, except to note that it will, of course, be determined by the court’s judgment on the facts.” The ownership of the apartment is, I believe, a factor which should be taken into account in making an award under section 1140-a of the Civil Practice Act. For that reason I shall give the parties an opportunity to consider more fully the questions involved in the third and fourth counterclaims and to incorporate their respective views in the briefs to be filed. (See American Sur. Co. v. Conner, 251 N. Y. 1.) But so that judgment in the other causes of action may be entered now, the third and fourth counterclaims are severed from the pleadings as they now stand.
Settle form of order of severance and of decree.