CHAPPELL *et al. v.* SMALL, tax-commissioner, *et al.*

144

No. 14111. MAY 21, 1942. REHEARING DENIED JUNE 16, 1942.

146

*R. L. Maynard,* for plaintiffs.

*Dykes, Bowers & Dykes,* and *H. O. Jones,* for defendants.

GRICE, Justice. ██ The response made by the tax-commissioner and that of certain other persons who were intervenors raised an issue of fact; and under the Code, §§ 64-107, 64-108, the judge on an inspection of the pleadings would have been compelled to refer the same to a jury, there to be determined as other jury causes are tried, except for the provision of the amendment to paragraph 8 of section 4 of article 6 of the constitution of this State (Ga. L. 1939, p. 78), which in terms provides that "The judges of said [superior] courts may, on reasonable notice to the parties, at any time, in vacation, at chambers, hear and determine, by interlocutory or final judgment, any matter or issue, where a jury verdict is not required, or may be and has been waived." On the day fixed by the rule nisi for the hearing the tax-commissioner and the intervenors appeared, and the trial, without objection, began before the judge without a jury. Testimony was introduced, and so far as the record shows no point was raised as to the desire of either party to have the issues of fact raised by the pleadings passed upon by a jury. No motion was made to refer the issues to a jury, and there is no exception in the record to the fact that the judge heard the testimony without a jury and entered the final judgment in the cause. Under these circumstances it must be held that a jury trial was waived.

██ Counsel for the intervenors who opposed the grant of the mandamus insist that the very terms of Judge Littlejohn's order validating the bonds, taken in connection with the proof as to what transpired at that hearing, show that he refused to validate them until the parties had agreed that certain territory referred to in the briefs as the Blue Belt in Sumter County should be eliminated.

The record of the validation proceedings before Judge Littlejohn was in evidence at the mandamus hearing before Judge Harper, together with certain testimony as to what happened at the validation proceedings. In the matter last referred to the only pleadings were those filed by the solicitor-general and the response by the Lysian School District. There were no intervenors, though it appears that certain persons, residents of the Blue Belt, were present. The petition did not describe, by metes and bounds or otherwise, the school district, though it did contain a recital that a map thereof was in the ordinary's office. The response of the school district contained the clause, "a plat of the said school district being on file in the office of the ordinary of Sumter County, hereto attached." The judgment of validation following the language of the solicitor-general's petition contained a recital that a map of the school district was of file in the ordinary's office. There was testimony that Judge Littlejohn refused to pass on the order of validation until the parties agreed upon the boundary lines of the school district.

It is no part of the duty of the judge passing on validation proceedings to determine the boundaries of the political subdivision the bonds of which he is asked to validate. The Code, § 87-304, declares, in part: "Within the time prescribed in the order, the judge of said superior court shall proceed to hear and determine all of the questions of law and of fact in said cause, and shall render judgment thereon; and in the event his judgment shall be in favor of the issuance of the bonds, a judgment and order shall be entered to that effect." An examination of the judgment of validation shows that what the judge passed upon was the petition asking that the bonds be validated; the judgment reciting that no objection is made to the issuance of the bonds described in the petition, and containing further appropriate recitals, including one that "it appearing to the court that the Lysian School District of Sumter County, Georgia, was laid out and bounded as prescribed by law, and that a map thereof is on file in the office of the ordinary of Sumter County, Georgia." The act approved August 21, 1906 (Ga. L. 1906, pp. 61, 67), which deals with local taxation for public schools, provides (sec. 6) that a "map of the county thus laid off, plainly outlining the boundaries of the school district with full description thereof, shall be filed with the ordinary," etc.

Nothing in the sentence of Judge Littlejohn's order mentioning the map of the district that was on file in the ordinary's office leads to the conclusion that he was thereby adjudicating that this issue of bonds should not operate on that part of the Lysian School District known as the Blue Belt, although attached to the answer of the school district was a map that lent color to the view that the trustees of the district had concluded that the Blue Belt had been eliminated from the Lysian School District. Nor can we give such effect to the testimony of certain persons, on the hearing before Judge Harper, as to what took place before Judge Littlejohn. A court speaks through its judgment. The judgment validates the bonds voted for by the citizens of the school district, whatever the bounds of that district were. The judgment of validation, like any other judgment, must be construed with reference to the pleadings. *Stanfield* v. *Downing Co.*, 186 *Ga.* 568 (199 S. E. 113). A judgment is not presumed to be erroneous. 31 Am. Jur. § 413. If the judgment of validation was susceptible of two interpretations, one of which would render it legal and the other illegal, it would be the duty of this court to adopt the former. 34 C. J. § 794; and cases cited in Decennial Digest, under Judgment, § 524. Since Judge Littlejohn had before him only the question of whether or not the bonds should be validated, and this in turn opened the inquiry only as to whether the representations contained in the petition of the solicitor-general were sustained, his judgment of validation must be given no greater effect than an adjudication of the issues thus before him.

This record shows that originally the Blue Belt constituted a part of the Lysian School District, and was a part of it on December 22, 1921, which was the date of the election held for the purpose of issuing school bonds. It is true that in April and in August, 1921, the Board of Education of Sumter County passed resolutions providing that this section should be joined to the Smithville School District in Lee County, but this was done on the express condition that the Lee County Board of Education approved such action. The minutes of the Sumter County board, dated April 5, 1921, with reference to this matter recited: "Upon the passage of a resolution by the Smithville High School District admitting the same, then the said lands shall be known and shall become a part of the Smithville High School District of Lee

County, Georgia, and cut off and taken away from the Lysian School District of Sumter County. . . The superintendent is hereby authorized and requested to transfer a copy of this resolution duly certified to the Board of Education of Lee County, Georgia; and when the same is accepted and ratified and agreed to by them, this change shall be effective, and the same will then be marked out and outlined on the school map of Sumter County, and the territory hereby embraced shall be known and become a part of the Smithville High School District of Lee County. Plat attached." On the date of the election, December 22, 1921, the Lee County authorities had not acted upon the resolution passed by the Sumter County Board of Education which, subject to the approval of the Lee County board, transferred the territory from a Sumter County to a Lee County school district.

At the hearing of the mandamus case before Judge Harper there was testimony by John D. Williams that a day or two before Judge Littlejohn validated the bonds he, Williams, went to the county site of Lee County; and after presenting the matter to the Lee County Board of Education, that board voted on and accepted the Sumter County resolution. If this testimony established the fact that at that time the Lee County board acted upon the resolution of the Sumter County board hereinbefore referred to, it would not be in harmony with an excerpt from the minutes of the Lee County Board of Education—the only minute of that board on the subject—which shows that on February 6, 1922, this resolution was passed: "A resolution was passed to concur in the resolution passed by the Sumter County Board of Education to annex to the Lee County schools for the Smithville School District a part of the Williams or Lysian School District, said territory described in their resolution, copy of which is hereto attached. Also a resolution was passed to concur in resolution passed by the Sumter County Board of Education to annex to the Lee County Schools a part of Sumter School District of Sumter County, Georgia. Said territory described in a resolution passed by them and hereto attached, and by this resolution we do accept the territory offered and annex it and make it a part of the Smithville School District of Lee County, Ga." This was after the validation, and of course the election for bonds had been held. The laying out of Sumter County into school districts was in compliance with legislative re-

**150**

quirement. Code, § 32-1101. This court held, in *Cash* v. *Douglasville,* 94 *Ga.* 557 (20 S. E. 438), that in chartering a town, or amending its charter, the legislature may give such extent and boundaries to the incorporated territory as it may choose, and all the inhabitants and their property within the corporate limits so fixed are alike subject to taxation to raise municipal revenue for all legitimate purposes, without respect to the time when some of the liabilities arose to which the revenue is to be applied; and thus that binding debts of the corporation contracted before the limits were extended, unless otherwise provided in the new or amended charter, are chargeable upon the territory added, as well as upon that comprehended by the boundaries before they were altered and extended. See *Toney* v. *Macon,* 119 *Ga.* 83 (46 S. E. 80); *White* v. *Atlanta,* 134 *Ga.* 532 (68 S. E. 103); *White* v. *Forsyth,* 138 *Ga.* 753 (76 S. E. 58). In *Barber* v. *Cummings,* 167 *Ga.* 289 (145 S. E. 443), this court held that where one school district incurs a bonded indebtedness for the purpose of building a schoolhouse, and this district and another district are consolidated so as to form a new consolidated district, the second district, the residents and taxpayers of which have not participated in the creation of the bonded debt, is not liable to pay any part of the debt incurred by the other district before the consolidation. But immediately following that ruling this court said: "This case differs from one in which territory is taken from one district and added to another, where the latter is already liable for a debt. The territory thus added may be liable for its proportionate part of the existing debt." In *Bond* v. *Pattillo,* 174 *Ga.* 571 (163 S. E. 188), this court had before it the exact question now under discussion; and it was held that where the taxation is for a bonded school indebtedness, the right to tax extends to real estate which was taxable as such at the time the indebtedness was contracted, although it is subsequently transferred to another district by legislative act. In support of this ruling *Barber* v. *Cummings,* supra, was cited.

In any view of the matter these intervenors owned property in that part of Lysian School District as its boundaries stood on December 22, 1921. On that date, after all legal requirements therefor had been complied with, an election was held for the purpose of issuing bonds which should be a lien upon all the property of the district. If it were understood that after the entire district had

voted to levy a tax on the property therein, with which to meet a contemplated bond issue, any portion of the property therein could be relieved of the payment thereof by the simple expedient of a transfer to another district, what assurance is there that a purchaser could be found for the bonds? If the Blue Belt could take such a step, so could every other belt. What incentive would there be for the voters as a whole to declare for a bond issue, knowing that thereafter the district might be practically emasculated, leaving perhaps only a small portion of the territory on which would fall the entire burden of discharging a bonded indebtedness which was contracted on the idea that all the property in the entire area would share its proportion of the levy? The law does not contemplate such a situation. The Code, § 32-1402, in part declares with reference to such bonds that "the board of county commissioners or the ordinary, as the case may be, shall levy upon the property subject to taxation in the district, such tax as may be necessary to provide a sinking fund for the retirement of said bonds and for paying the principal thereof and the interest thereon." In § 32-1403 it is provided that, "For the purpose of taking care of and paying the principal and interest of these bonds, the board of education shall recommend, and the board of county commissioners or ordinary, as the case may be, shall levy upon the property subject to taxation in the entire county, or in the area or territory within which said election is held, such tax as may be necessary to provide a sinking fund for the retirement of said bonds and for paying the principal thereof and the interest thereon." The provision last quoted is found in the act entitled Code of School Laws, approved August 19, 1919 (Ga. L. 1919, p. 288), in the latter part of section 145 thereof; and also the act approved August 15, 1921 (Georgia L. 1921, p. 221). This is a clear statement that property in the area within which said election is held shall be liable to the tax. The intervenors in the instant case owned property in the area at the time the election was held. It was not the purpose of the law to let them escape the burden of taxation which the law laid upon them merely because the school authorities, by levying a higher tax than they otherwise would be called upon to levy, could out of property in another part of the district raise sufficient funds to meet the necessary requirements. The record as a whole was such as entitled the plaintiffs to a mandamus absolute to require the tax

**152**

commissioner to include the property of these intervenors lying in the so-called Blue Belt portion of the county.

*Judgment reversed. All the Justices concur.*