26207.  SAVE THE BAY COMMITTEE, INC. et al. v.
MAYOR &c. OF THE CITY OF SAVANNAH et al.

438

ARGUED DECEMBER 14, 1970—DECIDED MARCH 18, 1971—
REHEARING DENIED APRIL 1, 1971.

*Aaron L. Buchsbaum, Falligant, Doremus & Karsman, Ogden Doremus,* for appellants.

*Malcolm Maclean, A. C. Young, Thomas J. Mahoney, Jr., James B. Blackburn,* for appellees.

HAWES, Justice. ■ This case was originally carried to the Court of Appeals and by that court transferred to this court on the theory that the case was one involving equity and title to land. A part of the area rezoned and upon which the defendant-developers propose to erect the apartment complex includes an area lying along the margin of rear wharf lots, 7, 8 and 9 west of Bull Street and known today and for more than 100 years as "Factors' Walk." Appellants contend that Factors' Walk in the area here in dispute includes an area originally laid out by the founders of the Town of Savannah as a part of the common property of all the lot holders of said town and that it is a part of the common originally designated as "The Strand" or "The Bay," which area, according to Acts of the Colonial Assembly of Georgia, as will be more fully set forth hereinafter, could only be aliened or conveyed away by an Act of the legislature. They supported their contention in this regard by attaching as an exhibit to their motion for a summary judgment a copy of a plat certified by John Bethune, Surveyor General of Georgia, on January 4, 1832, as being a true copy of the plan of the Town of Savannah as taken from the original file in his office, which plan appears from other writing thereon to have been prepared on February 5, 1770, by Thomas Shruder, Deputy Surveyor General, pursuant to an application made to him on January 8, 1770, by a committee of the "Commons House of Assembly of this Province" from a resurvey made of the Strand,

the wharf lots and Common of the Town of Savannah under the direction of said committee. The said plat was attached as an exhibit to the affidavit of Lilla M. Hawes. She deposed in said affidavit that she is the Director of the Georgia Historical Society, a corporation, founded in 1839, which society is a branch depository of the Department of Archives and History of the State of Georgia, being so designated pursuant to Ga. L. 1965, p. 623 (*Code Ann.* § 40-804 (b)). This witness stated in her affidavit that it is her opinion that the aforesaid plat, or map, is a true and correct copy of the official map of the Town of Savannah which was prepared in 1770 pursuant to an Act of the General Assembly of the Province of Georgia adopted May 10, 1770. Marbury & Crawford's Digest, 120-121. This plat, or map, purports to show the original layout of the Town of Savannah, together with the location of streets, lanes and alleys and with the location of the town lots. In the area thus platted nearest the Savannah River there appear to have been six blocks of 10 lots each, each block being 300 feet in width and having therein 5 lots facing the Savannah River and 5 other lots separated from the aforesaid lots by a lane or alley 22 feet 6 inches in width facing away from the river. Each block of 10 lots is labeled as a "Tything", each tything bearing a different name, such as, "First," "Second," "Jekyl," "Wilmington," etc. The north property line of the 30 front lots in the six tythings nearest the river is shown as a straight line running approximately parallel to the river and approximately east and west. Because of the curvature of the river and of the bluff at that point, the distance of the north line of said lots from the river and the bluff varies. Wilmington Tything is shown as lying between Bull Street on the east and Whitaker Street on the west. The north property line of lots 1-5 of said Tything, that is, the property line thereof nearest the river, appears from this plat to be 208 feet south of the northern boundary of the common, or "Strand." Plaintiffs contend that the location of the original northern property line of lots 1-5 of Wilmington Tything is the same today as it was when originally established and is the southern margin of Bay Street in the area to the south of wharf lots 7, 8 and 9. Plaintiffs introduced a plat of the area showing present-day conditions including lots 1-5 of Wilmington Tything, Bay Street immediately to the north thereof,

an area designated as Oglethorpe Park lying between Bay Street and another public street labeled as "Factors' Row Street" to the east north and west of said park, and immediately to the north of Factors' Row Street and across a sidewalk bordering on the northern side thereof, rear wharf lots 7, 8 and 9. This plat also shows the relative present-day locations of the Savannah City Hall, Bull Street, River Street and front wharf lots 7, 8 and 9 and Whitaker Street and rear wharf lot 6 to the west and other adjacent properties. It also shows that a line drawn parallel to the north property line of lots 1-5 of Wilmington Tything and a distance of 208 feet to the north thereof traverses rear wharf lots 7, 8 and 9 on a line approximately 30 feet north of the northerly sidewalk margin on the north side of Factors' Row Street. The area approximately 30 feet wide and 300 feet long lying between the northern margin of the sidewalk on the north side of Factors' Row Street and the line thus drawn parallel to the northern boundary of lots 1-5 in Wilmington Tything and lying between the Bull Street ramp on the east and the Whitaker Street ramp on the west is the area with respect to which the parties dispute the title, the plaintiffs contending that this area is a part of the Common by virtue of the 1760 and 1770 Acts of the Colonial Assembly which could not be conveyed away or aliened except by Act of the General Assembly.

The 1770 Act above referred to provides, "That the plan annexed to this Act shall from henceforth be held, taken for and deemed the true plan of the said Town and Common of Savannah including the several wharf lots under the bank or bluff of said town and common." Examination of the enrolled original of said Act now of file in the Department of Archives and History of the State of Georgia does not disclose that there is any such plan annexed thereto. Whether the original of the plan purportedly prepared by Thomas Shruder in 1770, the copy of which was introduced as an exhibit to the affidavit of Lilla M. Hawes, is in fact the plan referred to by the aforesaid Act of the Colonial Assembly is a question of fact for the determination of a jury. If said plat is in fact what it purports to be, it would seem to be admissible as an ancient document under the provisions of *Code* § 38-312 and the weight and credit to be given thereto would be for the jury. *Bunger v. Grimm,* 142 Ga. 448 (4) (83 SE 200, AC 1916 C 173);

*Rieves v. Smith,* 184 Ga. 657, 661 (192 SE 372, 112 ALR 368); *R. G. Foster & Co. v. Fountain,* 216 Ga. 113, 122 (114 SE2d 863).

It is the contention of the plaintiffs-appellants that this plat, or map, establishes the limits of the Common embracing an area between the town lots and the bluff abutting the river front of the City of Savannah and that it shows such Common thereon denominated as "The Strand" as extending in a northerly direction a distance of 208 feet perpendicularly to the north line of lots 1-5 of Wilmington Tything. Plaintiffs contend that this area is a part of the original Common of the Town of Savannah, by the Act of the Colonial Assembly approved May 1, 1760, and subsequently confirmed by the Act of the General Assembly of this State approved February 10, 1787 (Marbury & Crawford, pp. 121-122), and could only be alienated by an Act of the General Assembly. It is certainly true that prior to the Act approved August 11, 1927 (Ga L. 1927, p. 1537), none of "the Common appertaining to said town . . . including all the squares, streets, lanes, and passages, described in the plan of said town in the Surveyor General's office, and [which] have been heretofore accustomed or made use of by the inhabitants of said town, shall be and continue the common property of the lot holders in said town, and shall not be aliened or granted away for any purpose, whatsoever, than by an Act of the General Assembly." Marbury & Crawford, p. 117; *Mayor & Aldermen of the City of Savannah v. Wilson & Gibson,* 49 Ga. 476 (1).

The appellees contend, however, that the decision of the Superior Court of Chatham County rendered in 1888 in the case of Clinch v. Mayor & Aldermen of the City of Savannah confirmed in the defendant-developers' predecessors in title to lots 7, 8 and 9 title to the area here in dispute known as Factors' Walk. The certified copy of the transcript of the record in that case included in the record in this case transmitted to this court as an exhibit to the motion of the defendant-developers for a summary judgment shows that that suit was an action by the then owners of rear wharf lots 7, 8 and 9 against the Mayor & Aldermen of the City of Savannah to enjoin the city from removing obstructions placed by the then owners or their tenants in the area known as Factors' Walk. The plaintiffs alleged that they held title to wharf lots 7, 8 and 9 west of Bull Street, together with all the improvements

thereon. They alleged that the city was contending that "the southern *boundary* of said lot #7, #8 and 9 is a passageway called 'Factors' Walk' and not Bay Street." (Emphasis supplied). Plaintiffs alleged further that Factors' Walk is not and never has been a public thoroughfare but that it had always been maintained by the owners of said lots as a passageway leading to the buildings thereon from Bull and Whitaker Streets and they prayed that "the *boundaries* herein claimed by your orators respectively *may be ascertained* and established by the decree of this court and that the right of possession and title of your orators respectively thereto be quieted" (emphasis supplied), and that the city be enjoined and restrained from disturbing the plaintiffs in the full enjoyment and possession of the said area known as Factors' Walk. In its answer, the City of Savannah denied that the *boundaries* of said lots were as contended by the plaintiffs and alleged further "that the southern *boundary* of said lot[s] . . ., is the southern wall of the brick building[s] now on said lot[s] . . . and said southern *boundary* is separated from Bay Street in said City of Savannah by the open spaces south of said buildings known as 'Factors' Walk' and by the other open space on the top of the bluff in said city known as the 'Strand' lying immediately north of Bay Street." (Emphasis supplied.) Thereafter, the defendant amended its answer and conceded that the plaintiffs therein had fee simple title to wharf lots 7, 8 and 9 west of Bull Street "southward to the present edge of the sheds in front of the buildings on said lot[s] being thirty (30) feet, more or less, southward from the southern face or wall of the buildings and towards Bay Street," which area included the portion of Factors' Walk traversing lots 7, 8 and 9. The decree rendered was that the plaintiffs have fee simple title to wharf lots 7, 8 and 9 west of Bull Street "southward to the present edge of the sheds in front of the buildings on said lots[s] being thirty (30) feet, more or less, southward from the southern face or wall of the buildings and towards Bay Street."

Under the Acts of the Colonial Assembly above referred to, as continued in force and effect by the Act of February 10, 1787, the Superior Court of Chatham County, in 1888, had no jurisdiction to render a decree having the effect of confirming in private parties

title to any land which had theretofore been a part of the Common of the City of Savannah. If the decree in the Clinch case should be so construed, it would be our duty to declare the same to be void and of no force and effect as res judicata. However, when a judgment is susceptible of two meanings, one of which would render it legal and the other illegal, the court should give it that construction, if reasonably possible, which would render it legal. *Chappell v. Small,* 194 Ga. 143, 148 (20 SE2d 916); *Byrd v. Goodman,* 195 Ga. 621 (2a) (25 SE2d 34). The judgment in the Clinch case is clearly subject to two constructions. One possible construction is that it decreed title in the plaintiffs therein to a strip of land 30 feet in width along the southern margin of wharf lots 7, 8 and 9, which strip, prior to the rendition of such judgment, had been a part of the Common of the Town of Savannah. Such a construction would render it an illegal and void judgment. The other possible construction is that the 1888 decree merely fixed the location of a disputed boundary between the south side of said wharf lots and the north side of the Common. When so construed, it would be a legal judgment even though it might incidentally affect the title to the strip of land in dispute. This is true because only the courts have the facilities for determining the location of a disputed land line either by a statutory processioning proceeding or by a determination of the issues made in an injunction or other appropriate proceeding. Construing the decision in the Clinch case in the light of the pleadings, as must be done (*Stanfield v. Downing Co.,* 186 Ga. 568 (199 SE 113); *Bentley v. Still,* 198 Ga. 743 (32 SE2d 814)), and so as to uphold it rather than invalidate it, we hold that it did nothing more than settle the location of a disputed land line. So construing the 1888 decree, it being a judgment in rem, it was binding, under the principles of res judicata, upon everyone. *Code* § 110-502.

The pleadings and the evidence in this case present the question as to where the boundary thus fixed by the 1888 decree is. As we view the evidence, this is a question not capable of ascertainment on the state of the record which was before the trial court and which is before this court. This is true because the court in the Clinch case decreed that the plaintiffs have fee simple title to the wharf lots 7, 8 and 9 west of Bull Street "southward to the

present edge of the sheds in front of the buildings on said lot being thirty (30) feet, more or less, southward from the southern face or wall of the buildings and toward Bay Street." It is undisputed that the buildings then referred to no longer exist but have been torn down and replaced by buildings which the present developers propose to demolish. Whether the existing buildings were erected on exactly the same site as the former buildings is not disclosed by any of the evidence before us. Furthermore, the decree referred to an open space "approximately 85 feet, 9 inches" in width lying between the said 30-foot strip and the north line of the sidewalk on Bay Street. Whether the sidewalk which is presently on the north side of Bay Street is in the same location as was the sidewalk on the north side of Bay Street in 1888 does not appear.

Under all the circumstances of this case, we think it was a jury question as to just exactly where the line purportedly fixed by the 1888 decree now lies, and that the real dispute between the parties in this regard must be settled by the submission of additional evidence to a jury to enable this question to be ascertained.

■ Prior to the rezoning of wharf lots 7, 8 and 9 and the exchange of properties herein complained of, said wharf lots consisted of seven separate parcels designated as front wharf lots 7, 8 and 9 and rear wharf lots 7, 8 and 9, the front portions thereof being separated by a parcel of land approximately 30 feet in width and 300 feet in length running parallel to the river on which was located a portion of River Street. This segment of River Street is shown by the plats and maps admitted in evidence as being out of alignment with the portions of River Street to the east and west thereof. The city proposed the realignment of River Street, and to that end agreed to convey to the developers the tract whereon River Street traversed wharf lots 7, 8 and 9 in exchange for portions of front wharf lots 7 and 8, it appearing that the city already owned a portion of front wharf lot 9 necessary to be used to effect the realignment of River Street which was sought to be accomplished. The appellants attack the conveyance by the city of the parcel of land comprising River Street traversing wharf lots 7, 8 and 9 to the defendant developers contending that the same was in excess of the powers of the city and that the conveyance is null and void.

By the Act approved August 11, 1927 (Ga. L. 1927, p. 1537) the Mayor & Aldermen of the City of Savannah were authorized and empowered to sell to abutting property owners "for such compensation as may to the Mayor and Aldermen of the City of Savannah seem reasonable and just, such streets, lanes, alleys and/or ways as do not conform to the plan of the City of Savannah as originally laid out, or as extended; or which are obsolete as streets, lanes, alleys and/or ways; or which no longer served the particular purpose for which the particular street, lane, alley, and/or way was originally established." This Act further provides that no such action by the Mayor & Aldermen of the City of Savannah would be binding on the city unless approved by two thirds of the aldermen present and voting thereon. This Act clearly authorizes the Mayor & Aldermen of the City of Savannah to sell property of the kind therein described at private sale. The record shows that the mayor and council unanimously adopted a resolution December 23, 1969, wherein the conveyance to M. W. Dixon, II, and H. M. Dunn, Jr., of a portion of River Street containing 7,708.58 square feet was approved, the consideration therefor appearing therein to be the simultaneous conveyance by Dixon and Dunn to the city of portions of front wharf lots 7 and 8. The plats in the record show that the portion of River Street thus conveyed to Dixon and Dunn is abutted on the south by rear wharf lots 7, 8 and 9, and that Dixon and Dunn were then the owners of the same. While it does not appear that the resolution of the mayor and aldermen contains any express finding that the portion of River Street thus to be conveyed to the abutting property owners did not conform to the plan of the City of Savannah as originally laid out or as extended or that it no longer served the particular purpose for which it had been laid out or originally established or that it was obsolete, the resolution does show that it was adopted to implement "the river front improvement plans relative to the beautification and realignment of River Street," and we think that this finding was tantamount to a finding that under the revised plans of the city as adopted by the mayor and aldermen the existing River Street traversing portions of wharf lots 7, 8 and 9 was obsolete. No magic attaches to the words used by the statute, and we do not think that any useful purpose would

be served by invalidating the conveyance made pursuant to this resolution solely for the purpose of returning the matter to the mayor and aldermen in order to have a finding made in the exact language of the statute. There is a presumption that ordinances and resolutions adopted by the duly constituted municipal authorities of a city are valid. See *Merwel Developers, Inc. v. City of Marietta Board of Adjustments,* 100 Ga. App. 60 (2) (109 SE2d 926); *Code* § 102-102 (6). The conveyance of the portion of River Street as complained of was not null and void as contended by the appellant and the trial court did not err in refusing to so declare it.

■ The city had authority to grant a license to the defendant developers to erect a bridge or passageway over the street so long as the same is erected so as not to interfere with the reasonable and ordinary use of the street by the public for passage. Whether or not the requirement that no part of any structure so erected across the street would be closer than 20 feet vertically from the surface of the street was a reasonable restriction upon such right would seem to be a matter within the discretion of the municipal authorities. Such a right being merely the grant of a license it necessarily was granted subject to the inherent right of the city to revoke the same upon reasonable notice at any time and to require the developers to remove any such structure. *Simon v. City of Atlanta,* 67 Ga. 618 (44 ASR 739); *City Council of Augusta v. Burum & Co.,* 93 Ga. 68 (19 SE 820, 26 LRA 340); *City of Atlanta v. Holliday,* 96 Ga. 546 (23 SE 509).

■ This court has repeatedly held that the notice requirements embodied in zoning ordinances enacted pursuant to law must be strictly complied with in any rezoning action taken by the governing authorities of a municipality. *Jennings v. Suggs,* 180 Ga. 141 (178 SE 282); *Atlantic Refining Co. v. Spears,* 214 Ga. 126 (103 SE2d 547). Accordingly, where the zoning ordinance here required publication of the notice of the zoning hearing to be made at least five days before the date of the hearing and where the record shows without dispute that the publication was had only four days before the hearing the requirement of the ordinance was not met. Likewise, the ordinance requires that written notice of a rezoning hearing be given to adjoining property owners and to the owners of property located directly across a public way. Emma Adler

owned a building located on the south side of Bay Street, same being located on lot 1 of Wilmington Tything. Directly in front of the building is Bay Street and running perpendicularly thereto a portion of a semi-circular street referred to as Factors Row Street. Factors Row Street, together with Bay Street, encircles a small public park. Both streets, that is, Bay and Factors' Row, comprise in reality but one public thoroughfare. Nothing intervenes between Mrs. Adler's property and a portion of the property sought to be rezoned except this thoroughfare. It is undisputed that Mrs. Adler was not afforded the written notice to which she was entitled under the ordinance. Under these circumstances, the ordinance was not complied with in this regard. For these reasons the action of the governing authority of the City of Savannah in rezoning the tract was void. If there be anything in the case of *Ellis v. Stokes,* 207 Ga. 423 (61 SE2d 806) contrary to that which we now rule, that case, being less than a full-bench decision, must yield to earlier full-bench decisions, such as *Jennings v. Suggs,* supra.

■ Appellants contend that the action of the Savannah Zoning Board of Appeals in rezoning the property in question or in granting a special use permit was void because two members of the board were nonresidents of the City of Savannah at the time such action was taken. While the allegations of the complaint in this regard were denied by members of the board in their joint answer with the mayor and aldermen, the record shows, as pointed out by the appellant, that member Troy A. Bouy and member Charles L. Stewart, Jr., in response to requests for admission served on them individually by the attorney for the plaintiffs, admitted that they were not, at the time of their appointment, or at the time of the action by the Savannah Zoning Board of Appeals, residents of the City of Savannah, but that they resided outside the city limits thereof. A certified copy of § 38-164 of the City Code of Savannah which is a part of the record in this case shows that one of its requirements is that "The Board of Appeals shall consist of five members residing within the city." Thus, it appears without dispute that the two named members of the board were disqualified under the terms of the zoning ordinance to serve on the Zoning Board of Appeals. However, they were de facto members of such board and their acts in that capacity were valid until their ineligi-

bility to serve as members of the board had been judicially ascertained. *Code* § 89-101; *Varnadoe v. Housing Authority of the City of Doerun,* 221 Ga. 467, 471 (145 SE2d 493); *Hagood v. Hamrick,* 223 Ga. 600 (157 SE2d 429). Under the foregoing rule, the action of the Zoning Board of Appeals here complained of was not for this reason void, but any future action of the board pursuant to the direction which is being given by this court in this case, in order to be valid, must be by a board legally constituted.

■ The contention of the plaintiffs with respect to the anticipated pollution of the Savannah River or increase in such pollution caused by erection by defendant developers of the facilities in question partakes of the nature of an action to abate or restrain a public nuisance. It does not appear that the plaintiffs will sustain any special damages in which the public in general do not participate, and they, therefore, have no cause for relief on this ground. *Code* § 72-103.

■ The remaining contentions of appellant either relate to matters not likely to re-occur on another trial or are without merit. For the reasons set forth in Divisions 1 and 4 of this opinion, the trial court erred in granting to the defendant a summary judgment. The court did not err in refusing to grant a summary judgment to the plaintiff. For the reasons set forth in the first and fourth divisions of this opinion, the judgment granting a summary judgment to the defendants must be reversed.

*Judgment affirmed in part; reversed in part. All the Justices concur.*