**FOURTH DIVISION**
**DILLARD, P. J.,**
**LAND, and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 2, 2025**

# In the Court of Appeals of Georgia

A25A0094. BERLIN et al. v. CITY OF ATLANTA URBAN
  DESIGN COMMISSION et al.

WATKINS, Judge.

This discretionary appeal is the second appearance of this case before our Court. The parties' dispute concerns whether the City of Atlanta's Urban Design Commission (the "UDC") properly approved of two Certificates of Appropriateness ("COAs") for the redevelopment of two parcels in the Druid Hills Landmark District (the "District"). District residents (the "Neighbors") appealed the UDC's decision to the superior court, which granted summary judgment to the City and developers. We granted the Neighbors' application for discretionary review, and they now argue, inter alia, that the trial court erred because the UDC did not strictly or substantially

comply with notice requirements and because the proposed redevelopment violated the District's COA standards. For the reasons set forth below, we disagree and affirm.

When reviewing a superior court's order in an administrative proceeding, this Court reviews the tribunal's findings of fact to determine whether they are supported by any evidence but reviews conclusions of law de novo.[1]

Our prior decision, *Berlin v. City of Atlanta ("Berlin I")*,[2] sets forth the relevant facts:

> Renu and Altaf Lal ("Owners") own two adjoining parcels within the District that currently contain two homes and two free-standing garage structures. On February 2, 2021, the Owners applied to the UDC for COAs to redevelop the parcels. Specifically, the Owners sought one type of COA [type IV] for the demolition of the existing garage structures on the properties; and a second type of COA [type III] to (1) restore and expand the existing homes; (2) construct two new homes comparably sized to the renovated existing homes; and (3) build a pool house.
>
> The UDC set the matter for a public hearing at its February 24, 2021 meeting. Hearing notices were mailed to 29 property owners, but not to Neighbors Melissa or Daniel Berlin. The Owners posted signs on the properties advertising the hearing, and the City published on its

---

[1] See *Infinite Energy v. Ga. Pub. Svc. Comm.*, 257 Ga. App. 757, 758 (1) (572 SE2d 91) (2002).

[2] 368 Ga. App. 335 (890 SE2d 68) (2023).

official website the UDC agenda for the February 24 hearing, which included the Owners' COA applications.

The Neighbors claim that the Owners' architect told them that the Owners would not be presenting their applications at the February 24 meeting, but, in fact, the Owners did present. Zoom attendance records show that at least two of the Neighbors were present. The Neighbors had submitted a lengthy written opposition to the Owners' applications beforehand, and one made a verbal presentation at the hearing. The Neighbors opposed the applications on the grounds that they had not received adequate notice as required by the City's municipal code and that the Owners' proposed renovations would alter the character of the neighborhood and disturb their quiet enjoyment of their own properties.[3] At the end of the February 24 hearing, the UDC voted to defer the applications for further consideration.

The UDC re-heard the matter on March 24. Although no new notices were mailed and no additional signs were posted, at least two of the Neighbors attended and spoke at the March 24 meeting. The UDC voted to approve the demolition COA, and the Neighbors do not challenge that decision. The UDC also voted to defer for consideration the second COA that would allow the Owners' proposed new construction until the UDC's April 14 meeting. No new notices were provided for the April 14 hearing, but some of the Neighbors and their legal counsel attended and made written and/or oral presentations. At

---

[3] For instance, the Owners' plans apparently require the removal of a portion of tree canopy, and all four homes would have rooftop decks giving the occupants views into neighboring lots.

the end of the April 14 hearing, the UDC voted unanimously to approve the second COA.

The Neighbors timely filed a petition for certiorari in the superior court, naming the UDC and its individual members as respondents and the City and the Owners as defendants. The Neighbors asserted three claims for relief: (1) a challenge to the UDC's substantive decision to approve the second COA; (2) declaratory judgment, seeking a ruling that the approval was void due to improper hearing notice; and (3) an injunction to stop the Owners from proceeding with the project. The Neighbors then filed a motion for partial summary judgment on their claim of inadequate notice. . . . No briefing by any party addressed the UDC's substantive decision to grant the second COA.

Following oral argument, the superior court entered a "Final Order Denying Petitioners' Motion for Partial Summary Judgment and Granting Summary Judgment to Defendants." As to the notice argument, the court ruled that the municipal code did not require notice before every hearing, that substantial compliance with the notice requirements was sufficient, that substantial compliance occurred here, and that the Neighbors were not harmed by any deficiency in notice. The court went on to construe the response briefs filed by the City and the Owners as cross-motions for summary judgment, which it then granted.[4]

In the ensuing appeal, this Court held that the superior court erred by entering a final order disposing of the entire case when the Neighbors' substantive challenges

---

[4] *Berlin I*, 368 Ga. App. at 335-338.

4

remained unaddressed.[5] Consequently, we vacated the superior court's judgment and remanded the case for further proceedings.[6] As a result, this Court declined to reach the Neighbors' claims that the superior court erred in: (i) "concluding that the City's regulation of 'design' was not the exercise of 'zoning power'"; (ii) "concluding that 'substantial compliance' was the correct standard for the applicable notice procedures"; and (iii) dismissing as moot the Neighbors' claim for a declaratory judgment.[7]

Back in the superior court, on remand, the Neighbors filed an amended certiorari petition challenging the UDC's decisions on substantive grounds and (again) on the ground that the UDC did not comply with the notice requirements. The superior court thereafter issued an Omnibus Order, in which it again denied the Neighbors' motion for partial summary judgment and granted summary judgment to the City and Owners as to the procedural issues it previously addressed.

---

[5] *Berlin I*, 368 Ga. App. at 338-339 (1).

[6] Id. at 339 (1).

[7] Id. at 339 (2).

Following additional briefing and a new hearing, the superior court issued a detailed Final Order in which it denied the Neighbors' certiorari petition and affirmed the UDC's approval of the Owners' applications. The court found that the UDC did not commit clear legal error, as it properly considered the relevant regulations and reviewed the evidence presented when it approved the applications with conditions. The court further found that sufficient evidence supported the UDC's decision to grant the Owners' applications, specifically rejecting the Neighbors' claim that the additions to the existing structures and proposed new buildings would exceed the allowed square footage in the District. This appeal followed.

1. The Neighbors argue that the trial court erred in ruling that the UDC was not exercising the City's "zoning power" when it approved the Owners' COAs. The trial court concluded that the UDC made a design decision, under the City's general police power, rather than a zoning decision. This conclusion is important because it determines whether the UDC's hearings on the COAs were subject to strict compliance[8] or merely substantial compliance.[9] The Neighbors further contend that,

---

[8] "[N]otice requirements embodied in zoning ordinances enacted pursuant to law must be strictly complied with in any rezoning action taken by the governing authorities of a municipality." *Save the Bay Committee, Inc. v. Mayor of the City of Savannah*, 227 Ga. 436, 447 (4) (181 SE2d 351) (1971). Absent strict compliance, any such action is void. See id. at

because the City did not strictly comply with the notice procedures, the UDC's approvals of the COAs are void. We discern no error.

"Generally speaking, the interpretation of statutes, ordinances, and charters presents a question of law for the court and is subject to de novo review on appeal."[10]

---

448 (4) (concluding that the rezoning of a tract of land was void where: (i) publication of the notice of the zoning hearing was made only four days before the hearing, although five days' notice was required by the applicable zoning ordinance; and (ii) written notice of the hearing was not provided to one of the neighboring property owners, as required by the ordinance).

[9] Under OCGA § 1-3-1 (c), "[a] substantial compliance with any statutory requirement, especially on the part of public officers, shall be deemed and held sufficient, and no proceeding shall be declared void for want of such compliance, unless expressly so provided by law." Thus,

statutes directing the mode of proceeding by public officers, designated to promote method, system uniformity, and dispatch in such proceeding, will [generally] be regarded as directory if a disregard thereof will not injure the rights of parties, and the statute [neither] declare[s] what result shall follow non-compliance therewith, nor contain[s] negative words importing a prohibition of any other mode of proceeding than that prescribed.

Collins v. Nix, 125 Ga. App. 520, 523 (1) (188 SE2d 235) (1972) (citation and punctuation omitted).

[10] (Citations and punctuation omitted.) Infinite Energy, 349 Ga. App. at 344; accord City of Dunwoody v. Discovery Practice Mgmt., Inc., 338 Ga. App. 135, 139 (2) (789 SE2d 386) (2016).

In 2021, the City of Atlanta Code of Ordinances ("Atlanta Code") provided that before "any" UDC meeting on an application for the type of COAs at issue here (type III),

the following forms of notice [were] required:

a. Notice of [the COA application] shall be published on the official City of Atlanta web site at least 15 days prior to such meeting. Said notice shall state the date, time, place and purpose of said hearing. The notice shall include the location of the property and the present zoning classification of the property.

b. *Posting [signage on] the property*: In addition to the published notice above, the director shall cause the property involved in the proposed change to be posted at least 15 days prior to the hearing. Such posting shall be in a conspicuous place on the property by a sign or signs [that meet the criteria specified in this provision]. . . .

c. *Notice by regular mail*: The director shall also cause notice of the time, date and place of the hearing and the nature of the proposed change to be given by regular mail, with mailing at least 15 days prior to the hearing. Such mail shall be addressed to property owners (as ownership and address appears on the tax records of Fulton/DeKalb County) of all property within 300 feet of the property involved in the proposed change.[11]

_____

[11] See Atlanta Code § 16-20.008 (c) (2) (2020).

(a) The first step of our analysis is determining whether the City's compliance with the notice provisions should be evaluated for strict compliance (because the UDC was exercising the City's zoning power) or merely for substantial compliance (because the UDC was exercising the City's general police power). The Neighbors' claim that the UDC was exercising a zoning power when it addressed the COA applications is based primarily on two arguments. First, the Neighbors contend that the UDC's authority arises from two state constitutional provisions, which, broadly speaking, authorize the City to create a historic district and regulate it via zoning ordinances[12] and grant the City the power to create and regulate multiple such districts "and to enact appropriate planning and zoning ordinances."[13] Second, they emphasize

---

[12] See Ga. L. 1968, pp. 1826, 1827, § 1, codified at Atlanta, Ga. Code of Ordinances, § 7-1 (defining an "historic zone" as "a district or area within which the buildings, structures, appurtenances and places are of basic and vital importance for the development and maintenance of the community's tourism industry, its culture and for the protection of property values" due to several enumerated factors). The paragraph preceding the amendment text provided that the purposes of the amendment included providing for the enactment of "planning *and zoning ordinances . . .* to promote the educational, cultural, economic and general welfare of the City[.]" Atlanta, Ga. Code of Ordinances § 7.1 (emphasis supplied).

[13] See Ga. L. 1972, pp. 1515, 1516, § 1, codified at Atlanta, Ga. Code of Ordinances § 7.1 (authorizing the City to "establish one or more historic zones in the City as such governing authority may from time to time deem appropriate and to enact appropriate planning *and zoning ordinances* applicable thereto") (emphasis supplied).

that the notice requirements for a hearing on a COA application appear in a City zoning ordinance that is part of the same zoning scheme that created the District.[14] We are not persuaded.

There is no dispute that the City was exercising its zoning power when it *established* the District. But in deciding whether to approve a COA, the UDC does not rezone or decline to rezone certain property. Instead, as the trial court found, "[w]hen considering a COA application, the UDC is not concerned with use or density as is zoning, but with regulation of external architectural features."[15] These are design decisions that would seem to fall within the scope of the City's general police power rather than its zoning power. Additionally, while the ordinance describes what notice "shall" be given prior to a hearing on an application for a COA, it does not set forth

---

[14] See Atlanta, Ga. Code of Ordinances § 16-20.008 (c) (2) (Chapter 20, Historic and Cultural Conservation Districts); see also Atlanta, Ga. Code of Ordinances § 16-20B.001 et seq. (Chapter 20B, Druid Hills Landmark District).

[15] See Atlanta, Ga. Code of Ordinances § 1-102 (c) (42) (City's power to regulate land use includes authority to empower UDC to, inter alia, "prepare and promulgate administrative design criteria for historic zones or areas; . . . hold public hearings; . . . prohibit or authorize, conditionally or otherwise, construction, demolition or alteration within or of designated historic zones or areas and issue permits relative thereto; [and] promulgate administrative rules governing the [UDC's] operating procedures; and perform other similar historic preservation and urban design functions.").

a consequence for non-compliance, nor does it prohibit other modes of proceeding.[16]

Finally, the present case is clearly distinguishable from the strict-compliance cases the Neighbors rely upon because those cases concerned hearings on whether to rezone property[17] or whether to grant a conditional use permit.[18] For all of these reasons, we

---

[16] See *Collins*, 125 Ga. App. at 523 (1).

[17] See *City of Cumming v. Realty Dev. Corp.*, 268 Ga. 461, 463-464 (3) (491 SE2d 60) (1997) (statute required another public hearing after prior remand for rezoning); *Tilley Properties v. Bartow County*, 261 Ga. 153 (401 SE2d 527) (1991) (zoning ordinance was void where the county failed to comply with notice required by the Zoning Procedures ); *Golden v. White*, 253 Ga. 111, 112 (316 SE2d 460) (1984) ("[T]he trial court correctly ruled that the attempted *rezoning* of appellant's property was null and void for failure to provide proper public notice of the rezoning hearing.") (emphasis supplied); *South Jonesboro Civic Assn. v. Thornton*, 248 Ga. 65, 67 (281 SE2d 507) (1981) ("A governmental agency in *rezoning* must strictly comply with notice requirements embodied in zoning ordinances.") (emphasis supplied); *Atlantic Refining Co. v. Spears*, 214 Ga. 126, 128 (103 SE2d 547) (1958) (amendment to ordinance purporting to allow gasoline filling stations in the area was void where published notice was given 10 days before a hearing instead of the required 30 days).

[18] See *Hoechstetter v. Pickens County*, 303 Ga. 786 (815 SE2d 50) (2018); *C & H Dev., LLC v. Franklin County*, 294 Ga. App. 792 (670 SE2d 491) (2008). In their reply brief, the Neighbors note that these two cases regarding conditional use permits required strict compliance for zoning *actions* of a quasi-judicial nature (as opposed to zoning *decisions*) and are thus "like the case sub judice[.]" We are not persuaded. See *Hoechstetter*, 303 Ga. at 786 & n.1 (relying on definition of "zoning decision" in OCGA § 36-66-3 (4), which includes only the adoption of zoning ordinances and amendments and the grant of a special use permit).

conclude that the correct standard to evaluate the City's compliance with the ordinance's notice requirements is substantial compliance and not strict compliance.[19]

(b) The next question is whether the City substantially complied with the notice requirements. As detailed above, at the time relevant to this case, the Atlanta Code provided that before "any" UDC meeting on an application for a type III COA, notice of the application "shall" be published on the City website, signage "shall" be posted on the property, and notice of the hearing "shall" be mailed to those who own property within 300 feet of the property at issue.[20]

Here, it is undisputed that: a sign was posted on the properties before the first hearing, but not the second and third hearings; notice of the first hearing was mailed to only two of the four Neighbors; and no notices of the second and third hearings were mailed to any affected property owners. The trial court concluded that the word "any" in the context of Atlanta Code § 16-20.008 (c) (2) was capable of more than one construction: "any" could mean that notice was required before "every" meeting

---

[19] See OCGA § 1-3-1 (c).

[20] See Atlanta Code § 16-20.008 (c) (2) (2020).

wherein COAs were considered or (as the UDC's Rules interpreted it) that notice was only required prior to the first time the UDC considered a COA.

We agree with the trial court that the notice provided by the City amounted to substantial compliance with the ordinance. In arriving at this conclusion, we recognize that this ordinance is very similar to the hearing-notice provision in the Zoning Procedures Law, and in an opinion interpreting that law, the Supreme Court of Georgia noted that "the whole point of the statutory notice-and-hearing requirements is to afford interested citizens a meaningful opportunity to be heard on a proposed zoning decision."[21] Importantly, the Supreme Court expressly rejected the position that if the statute requires a hearing, one must be held at every step of the process.[22] Applying that rationale to the instant case, the ordinance's notice requirements are intended to provide a meaningful opportunity to be heard on COA applications. As the trial court found, the ordinance's text was written in a way to

---

[21] *Hoechstetter*, 303 Ga. at 787 (concerning OCGA § 36-66-4).

[22] Id.; see also *City of Cumming*, 268 Ga. at 463-464 (3) (rejecting the broadest possible reading of the Zoning Procedures Law that would require a hearing at every step in the zoning process and adopting a narrower reading that required only one hearing during the continuous course of a zoning matter before the local government).

ensure that any party having an interest in the outcome of the UDC's decision was able to participate in the decision-making process. If property owners receive notice of the first meeting, during which they are notified of future meetings and do in fact participate in those meetings either through physical presence or submitting letters for consideration, the legislative intent is fulfilled.[23]

Here, the record reveals that the Neighbors all either attended or otherwise participated in at least one of the meetings before the UDC. And they have wholly failed to show that they were harmed by the City's failure to comply with the notice requirements.[24] In short, the record establishes that the Neighbors were afforded a meaningful opportunity to be heard on these applications for COA.[25] Consequently,

---

[23] Because we agree that the City substantially complied with the notice requirements, we need not decide what deference, if any, to give the UDC's interpretation that § 16-20.008 (c) (2) does not necessarily require notice for future meetings related to the same COA.

[24] Cf. *McClure v. Davidson*, 258 Ga. 706, 710 (4) (373 SE2d 617) (1988) (expressly declining to rule on landowners' argument that the neighboring property owners "waived any right to notice and any right to complain of defective notice" because, even assuming that the neighbors' appearance at a rezoning hearing cured any defect in notice, at least one neighbor did not receive notice and did not attend the hearings).

[25] See *Hoechstetter*, 303 Ga. at 787.

the trial court properly found that the City substantially complied with the Atlanta Code's notice requirements.

2. The Neighbors alternatively argue that the UDC erred by disregarding the mandatory criteria for approving Type III COAs. Again, we disagree.

As noted above, we review agency findings of fact under the any evidence standard.[26] The UDC adopted a ten-page City Staff Report, which addressed and examined the property configuration and characteristics of the properties and the general design of each house and analyzed, inter alia, the use, density, required parking, height limitations, lot coverage, open space, tree removal, and architectural elements. The trial court did not err in concluding that there was evidence in the record to support the UDC's decision to approve the COAs.

*Judgment affirmed. Dillard, P. J., and Land, J., concur.*

---

[26] See *Infinite Energy*, 257 Ga. App. at 758 (1).